Christopher Adame
NAME

# V64509
PRISON NUMBER

P.O. Box 5007
CURRENT ADDRESS OR PLACE OF CONFINEMENT

Calipatria, CA. 92233
CITY, STATE, ZIP CODE

**FILED**

APR 3 0 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Christopher Adame ,
(FULL NAME OF PETITIONER)

**PETITIONER**

v.

James Tilton, Secretary, California
Department of Corrections and Rehabilitation
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE
CALIFORNIA DEPARTMENT OF CORRECTIONS])

**RESPONDENT**

and

Jerry Brown ,
The Attorney General of the State of
California, Additional Respondent.

'08 CV 787  H LSP

Civil No _____
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: _____
   Superior Court of San Diego County, San Diego, California

2. Date of judgment of conviction: The sentence was imposed on January 28th, 2005

3. Trial court case number of the judgment of conviction being challenged: _____
   SCD176307, SCD180441

4. Length of sentence: 74 years, 8 months -to- life

CIV 68 (Rev. Jan. 2006)

cv

5.  Sentence start date and projected release date: _Sentence commenced on January 28th, 2005; Petitioner is serving an indeterminate life sentence_

6.  Offense(s) for which you were convicted or pleaded guilty (all counts): _____
    _Listed in Attachment #1_
    _____

7.  What was your plea? (CHECK ONE)
    (a)  Not guilty          ☒
    (b)  Guilty              ☐
    (c)  Nolo contendere     ☐

8.  If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
    (a)  Jury        ☒
    (b)  Judge only  ☐

9.  Did you testify at the trial?
    ☒ Yes  ☐ No

## DIRECT APPEAL

10.  Did you appeal from the judgment of conviction in the **California Court of Appeal**?
     ☒ Yes  ☐ No

11.  If you appealed in the **California Court of Appeal**, answer the following:
     (a)  Result: _Judgement affirmed._
     (b)  Date of result (if known): _Novemember 3rd, 2006;_
     (c)  Case number and citation (if known): _Case no. D045872; Unpublished Opinion_
     (d)  Names of Judges participating in case (if known) _Acting Presiding Judge - Nares ; Judge J. McDonald ; Judge J. Aaron_
     (e)  Grounds raised on direct appeal: _Listed in Attachment #2_
     _____
     _____

12.  If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
     (a)  Result: _Petition for review denied._
     (b)  Date of result (if known): _February 14, 2007_
     (c)  Case number and citation (if known): _Unknown_
     _____
     (d)  Grounds raised: _Listed in Attachment #2 with the exception of numbers VI and VII (the last 2 grounds #6 & 7)_

CIV 68 (Rev. Jan. 2006)

cv

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

  (a) Result: _____

  (b) Date of result (if known): _____

  (c) Case number and citation (if known): _____

      _____

  (d) Grounds raised: _____

      _____

      _____

      _____


## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?
☐ Yes ☒ No

15. If your answer to #14 was "Yes," give the following information:

  (a) **California Superior Court** Case Number (if known):_____

  (b) Nature of proceeding: _____

      _____

  (c) Grounds raised: _____

      _____

      _____

      _____

  (d) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☐ No

  (e) Result: _____

  (f) Date of result (if known): _____

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?
☐ Yes ☒ No

17. If your answer to #16 was "Yes," give the following information:

    (a) **California Court of Appeal** Case Number (if known):_____

    (b) Nature of proceeding: _____

    (c) Names of Judges participating in case (if known)_____

    _____

    (d) Grounds raised: _____

    _____

    _____

    (e) Did you receive an evidentiary hearing on your petition, application or motion?
    ☐ Yes ☐ No

    (f) Result: _____

    (g) Date of result (if known): _____

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes ☒ No

19. If your answer to #18 was "Yes," give the following information:

    (a) **California Supreme Court** Case Number (if known):_____

    (b) Nature of proceeding: _____

    _____

    (c) Grounds raised: _____

    _____

    _____

    _____

    _____

    (d) Did you receive an evidentiary hearing on your petition, application or motion?

    ☐ Yes ☐ No

    (e) Result: _____

    (f) Date of result (if known): _____

20. If you did **not** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the <u>**California Supreme Court**</u>, containing the grounds raised in this federal Petition, explain briefly why you did not:

_____

_____

_____

_____

## COLLATERAL REVIEW IN FEDERAL COURT

21. Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
    ☒ Yes ☐ No    (IF "YES" SKIP TO #22)
    (a) If no, in what federal court was the prior action filed? _____
    (i) What was the prior case number? _____
    (ii) Was the prior action (CHECK ONE):
        ☐ Denied on the merits?
        ☐ Dismissed for procedural reasons?
    (iii) Date of decision: _____
    (b) Were any of the issues in this current petition also raised in the prior federal petition?
        ☐ Yes ☐ No
    (c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
        ☐ Yes ☐ No

<u>CAUTION:</u>
- <u>**Exhaustion of State Court Remedies:**</u>  In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present **all** other grounds to the California Supreme Court before raising them in your federal Petition.

- <u>**Single Petition:**</u>  If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.

- <u>**Factual Specificity:**</u>  You must state facts, not conclusions, in support of your grounds.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do.  A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

(a) **GROUND ONE**: _____

_____

_____

Supporting FACTS: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Did you raise **GROUND ONE** in the **California Supreme Court**?

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): *petition for review*

(2) Case number or citation: *Unknown*

(3) Result (attach a copy of the court's opinion or order if available): *Denied*

**(b) GROUND TWO:** Petitioner's counsel was ineffective for failing to litigate Fourth Amendment issues.

**Supporting FACTS:** On September 9, 2003, petitioner's first lawyer, Stephen Brodsky, filed a motion to suppress evidence pursuant to Penal Code, section 1538.5. The motion alleged that the warrantless inventory search of petitioner's vehicle violated the Fourth Amendment as its true purpose was to discover evidence of the crimes of which he was suspected. It was also argued that the inventory search was improper in that police failed to follow established guidelines for conducting vehicle inventory searches.

   The motion was denied. When trial counsel attempted to renew the motion, it was denied as "untimely."

   The issues described in Exhibit 1 were not litigated by either counsel.

   An attorney's failure to litigate meritorious suppression arguments can constitute ineffective assistance. (People v. Ledesma, supra, 43 Cal. 3d 171, 226; Kimmelman v. Morrison (1986) 477 U.S. 365.)

   Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness; the defendant must also prove that his Fourth Amendment claim is meritorious and that there is

**Did you raise GROUND TWO in the California Supreme Court?**

☒ Yes ☐ No.

   If yes, answer the following:

   (1)  Nature of proceeding (i.e., petition for review, habeas petition): petition for review

   (2)  Case number or citation: Unknown

   (3)  Result (attach a copy of the court's opinion or order if available): Denied

**(c) GROUND THREE**: _Not Applicable_

**Supporting FACTS**: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND THREE in the California Supreme Court?**

☐ Yes ☐ No.

    If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): _____

**(d)** **GROUND FOUR**: _Not Applicable_ _____

_____

_____

**Supporting FACTS**: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Did you raise GROUND FOUR in the California Supreme Court?**

☐ Yes ☐ No.

If yes, answer the following:

    (1)   Nature of proceeding (i.e., petition for review, habeas petition): _____

    (2)   Case number or citation: _____

    (3)   Result (attach a copy of the court's opinion or order if available): _____

cv

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes   ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

    (a)  Name of Court: _____

    (b)  Case Number: _____

    (c)  Date action filed: _____

    (d)  Nature of proceeding: _____

            _____

    (e)  Name(s) of judges (if known):_____

    (f)  Grounds raised: _____

            _____

            _____

            _____

            _____

    (g)  Did you receive an evidentiary hearing on your petition, application or motion?
       ☐ Yes   ☐ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)  At preliminary hearing: _Stephen Brodsky_____

    (b)  At arraignment and plea: _Stephen Brodsky_____

    (c)  At trial: _Jeffrey Wayne Carver, 1010 Second Avenue, Suite 1000 San Diego, CA 92101_

    (d)  At sentencing: _Jeffrey Wayne Carver_____

    (e)  On appeal: _Patrick Morgan Ford, 7901 First Avenue, Suite 400, San Diego, CA 92101_

    (f)  In any post-conviction proceeding: _Not Applicable_____

    (g)  On appeal from any adverse ruling in a post-conviction proceeding: _____
       _Not Applicable._____

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
☐ Yes  ☒ No

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
☐ Yes  ☒ No

  (a) If so, give name and location of court that imposed sentence to be served in the future:

  _____

  (b) Give date and length of the future sentence: _____

  _____

  (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
  ☐ Yes  ☐ No

**28.** Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to proceed before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.        **OR**        ☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

CIV 68 (Rev. Jan. 2006)

cv

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court: _____
_April 27ᵗʰ, 2008_

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

_Not Applicable_
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_April 27ᵗʰ, 2008_                    _Christopher McAdams_
(DATE)                              SIGNATURE OF PETITIONER

Attachment #1

regarding

#6  Offenses Convicted Of

# #6 OFFENSES CONVICTED OF:

Two counts of forcible rape (Penal Code 261 subd. (a)(2))

Two counts of forcible oral copulation (Penal Code 288a, subd. (c))

Two counts of felony false imprisonment (Penal Code 236, 237, subd. (a))

One count of robbery (Penal Code 211)

One count of assault with a deadly weapon likely to cause bodily injury (Penal Code 245, subd. (a)(1))

One count of receiving stolen property (Penal Code 496, subd. (a))

Multiple sexual assault victims (Penal Code 667.61(a)(c)(e))

Various sentencing enhancements

# Attachment #2

Grounds Raised On Direct Appeal
( I through VII)

and

Grounds Raised In Petition
For Review By California
Supreme Court
( I through V )

Grounds Raised On Direct Appeal (I - VII) and
on Petition For Review by California Supreme (I - V)

I. The admission at trial of the preliminary hearing testimony
of prosecutrix Pamela violated petitioner's Sixth Amendment
rights to confront and cross-examine his accuser, and
failed to meet the requirements of Evidence Code
section 240 by establishing the state's due diligence
to locate the witness

II. Vehicle Code section 22655.5, relied upon by police
to effect a warrantless seizure of petitioner's vehicle
from his driveway is unconstitutional; the seizure
therefore violated the Fourth Amendment

III. The search of a closed purse found during an inventory
search of petitioner's vehicle was unreasonable, as
police failed to demonstrate that they had, and
followed, established procedures for conducting an
inventory search of a closed container found in a
vehicle

IV. The search of petitioner's vehicle executed on August
6, 2003, was based on a warrant issued on
July 23, 2003, and therefore exceeded the ten
day time limit of Penal Code section 1534 subd. (a)

V. Petitioner's counsel was ineffective for failing to litigate the previously described Fourth Amendment issues.

VI. Count 11 must be reversed because the crime of receiving stolen property was time-barred

VII. Petitioner's convictions for false imprisonment in counts three and seven must be reversed because they are necessarily included in his convictions for forcible rape and oral copulation

*  VI and VII were omitted from petition for review by California Supreme Court

Attachment #3

Ground #1

AND

Supporting Facts

## Ground #1 and Supporting Facts

I. The admission at trial of the preliminary hearing testimony of prosecutrix Pamela violated petitioner's Sixth Amendment rights to confront and cross-examine his accuser, and failed to meet the requirements of Evidence Code section 240 by establishing the state's due diligence to locate the witness.

Pamela testified at the preliminary examination. She was twenty-four years old at the time. On the evening of June 8th, 2003, she was sitting at a bus stop on El Cajon Boulevard while working as a prostitute. When a man driving a silver four-door car approached a nearby gas station, she walked over and spoke to him. The man told her he wanted "his dick sucked." She asked for $100.

Pamela entered the car and they drove to a lot behind a closed office building in Mission Valley. It was an underground parking facility. When the man hesitated to pay, she started to leave the car. At that point, the man grabbed a knife from the backseat of the car. He told her "to shut up and suck his dick." As she orally copulated him, he held the knife to her face. He told her to remove her pants, and she refused. He ordered her out the car

1

When she left the car, he again demanded that she remove her pants. She complied. He ordered her to the ground in a crouched position, where he penetrated her vagina from behind. He continued for about 15 to 20 minutes. Afterwards, he looked in her purse, saw it contained nothing, and returned it to her. She then grabbed her pants and ran away. The man drove away in his car. Pamela located a security guard and reported the attack.

Later on, she identified petitioner in a photo line-up. She also said when first contacted by police she said petitioner had only forced her to orally copulate him. Eventually, she told the officer she had been raped. She was arrested for prostitution three days later.

She did not tell the police she was working as a prostitute, but rather said that she was abducted from El Cajon Boulevard. She refused to visit a hospital for a SART examination. She also refused to provide her pants to police for a forensic examination.

At trial, Officer King testified as to statements made by Pamela on the night of the alleged assault. Upon arriving at the scene on June 8th, 2003 Pamela reported to him that she was walking down the

street from Dave-N-Busters restaurant in Mission
Valley when a man in a four-door car drove up to
her with the window down and ordered her to get
into the car. He was holding a knife and had an
erect penis with a condom on it. She got in the
car and he drove her over to the underground
parking lot at the Life Sharing building where he
made her suck his dick at knifepoint. Officer
King asked Pamela 3 times during the interview
if she was raped. Each time Pamela denied being
raped. She said she was only forced to give oral sex
    Detective Cunanan gave testimony at the trial.
On June 10th, 2003 he arrested Pamela for prostitution.
On that date she never mentions anything to him
about being sexually assaulted on June 8th or
anything about the incident. On June 15th he
locates Pamela working on El Cajon Boulevard. With
Detective McFalls unavailabe to interview her he
decides to interview Pamela himself. Pamela initially
tells him the version of getting kidnapped alongside
the road. After further pressing, Pamela admits
that she was prostituting that night and tells
him that she got picked up, taken to a
parking structure and forced by knife

to give oral copulation (no condom) and then to have sex (with a condom)

Petitioner testified at trial that he paid Pamela for oral sex. After he paid her, Adame (petitioner) received a call from his girlfriend. Petitioners girlfriend said she was anoyed at him for being late. Petitioner decided that he no longer wanted to have oral sex with Pamela and demanded that Pamela return his money. When she refused, petitioner grabbed the money from her breast area and told her to get out of the car. She refused to leave and threatened him by saying her pimp was in the area and that he would get the money back. Petitioner grabbed Pamelas purse and threw it from the car. Pamela went to retrieve the purse, grabbed a small rock and threw it at petitioners car hitting the drivers side window leaving a small chip. Petitioner drove off.

Prior to trial, District Attorneys Investigator Catherine Garcia, testified to the prosecution's "due diligence" in attempting to locate then-missing witness, Pamela. For purposes of the preliminary hearing, she sent a subpoena to

4

Pamela's sister's house in San Diego. On the morning of the preliminary hearing, the investigator drove Pamela to court from her hotel. The investigator "kept communicating" with Pamela. This was usually done with Pamela's sister who only hears from Pamela every couple months or so.

As the trial date changed, the investigator sent subpoenas to Pamela's sister, or had vice officers serve her when they saw her on El Cajon Boulevard. She could not recall whether it was May or June when she last spoke with Pamela. She missed the June court date, then called the district attorney's office telling Garcia she couldn't make the June court date that day. Garcia does not mention the new court date to Pamela. The investigator learned that Pamela had also been missing court appearances regarding her prostitution arrest.

Vice officers had not seen Pamela or heard from her sister for several months. Computer checks of various databases also proved negative. She subsequently learned from the sister that Pamela had telephoned her and said that she was in Las Vegas with a boyfriend, and that she planned to stay. A telephonic check with the

5

Las Vegas police produced no results.

The investigator did not contact Pamelas other sister, or her parents. The investigator knew, from prior contacts, that Pamela was on probation. For the previous six months, Pamela failed to respond to a pager given to her by the district attorneys office. The investigator also "didn't bother" checking with the Post Office in Las Vegas.

The defense argued that, knowing the elusive character of this witness, the police made insufficient efforts to maintain contact with her and locate her once it became apparent she would not be appearing in court.

Citing People v. Diaz (2000) 95 Cal. App. 4th 695, the court found that "The state acted with sufficient diligence" to locate Pamela and therefore satisfied the requirements of Evidence Code section 240. The defense argued that Evidence Code section 240 may have become suspect following the United States Supreme Courts decision in Crawford v. Washington (2004) 541 U.S. 36, and objected on that basis as well.

6

The right to confront one's accuser, provided in
the Sixth Amendment and the California Constitution,
art. I, section 15, seeks,
"to ensure that the defendant is able to conduct a
'personal examination and cross-examination of the
witness, in which (the defendant) has an opportunity,
not only of testing the recollection and sifting the
conscience of the witness, but of compelling 'him
to stand face to face with the jury in order that
they may look at him, and judge by his demeanor
upon the stand and the manner in which he gives
his testimony whether he is worthy of belief.'"
(People v. Louis (1986) 42 Cal. 3d 969, 982,
quoting Mattox v. United States (1895) 156 U.S.
237, 242-243). To deny or significantly diminish
this right deprives a defendant of the essential
means of testing the credibility of the prosecution's
witnesses, thus calling "into question the ultimate
'"integrity of the fact-finding process."'"
(Chambers v. Mississippi (1973) 410 U.S. 284, 295.)

The importance of the fundamental right to
confront and cross-examine one's accuser was
emphasized in Crawford v. Washington, supra, 541

7

U.S. 36), where the court reviewed the history of the right and unanimously concluded that rules of evidence which permitted the introduction of unexamined, out-of-court statements against an accused violated the Sixth Amendment.

Nevertheless, the right is not absolute. The courts recognize that there is an exception to the confrontation requirement where a witness is unavailable has testified, and been subjected to cross-examination at a previous judicial proceeding (People v. Cromer, supra 24 Cal. 4th 889, 897; Barber v. Page (1968) 390 U.S. 719.) Before the prosecution can introduce testimony from a prior judicial proceeding, it must demonstrate that the witness is "unavailable," and that prosecutorial authorities have made a good-faith effort to obtain the witness' presence at trial, having exhausted all reasonable efforts to locate the witness.

What constitutes due diligence to secure the presence of a witness depends upon the facts of the individual case, and the term is incapable of a mechanical definition. The courts will consider the totality of the states efforts in this regard. (People v. Sanders (1995) 11 Cal. 4th 475, 523;

People v. Walton (1996) 42 Cal. App. 4th 1004, 1009.)

In this case, the prosecution's efforts were insufficient given their knowledge of the witness. Pamela was a working prostitute, not a typical "citizen witness." She lied to police on the night she reported the assault, first telling the officers that she had actually been abducted at knife point and had only been forced to perform oral copulation. At a later date she adds that she was raped according to police reports and testimony. She refused to go to the hospital for a SART examination and refused to provide her pants for a forensic examination. She appeared at the preliminary examination only after being escorted to court by an investigator. Thereafter, she became elusive. **She** was served with subpoenas by vice officers who found her working as a prostitute on El Cajon Boulevard. Police ignored the fact that her acts of prostitution violated her probation, as well as the law. When she missed a court appearance, the prosecutor made no additional efforts to locate her.

Once the prosecution learned that Pamela was likely living in Las Vegas, they did not

9

send investigators to locate her, and made no efforts beyond the keyboard of the office computers. It seems clear that, once Pamela's testimony was memorialized at the preliminary examination, police made only perfunctory efforts to locate her, knowing that her prior testimony would be memorialized and admissible.

"Due diligence" connotes, "persevering application, untiring efforts in good earnest, efforts of a substantial character." (People v. Linden (1971) 5 Cal. 3d 342, 346-347; accord, People v. Sanders, supra, 11 Cal. 4th at 523.)

Relevant considerations include "whether the search was timely begun'", the importance of the witness's testimony (citation), and whether leads were competently explored (citation).

(People v. Cromer, supra, 24 Cal 4th 889, 904.)

The prosecution "persevered" in its efforts to secure Pamela's appearance at the preliminary examination, but not afterwards. It made only occasional contact with a sister, never contacted Pamela's parents, and failed to arrest her when they observed her violating her probation by "working" on El Cajon Boulevard. They never traveled to Las Vegas after learning

10

that she moved there. The witness was not only important to prove the counts relating to the alleged assault, but also in making petitioner eligible for an indeterminate life sentence under the multiple victims provision of the one strike law.

While the defense was able to cross-examine the witness at the preliminary hearing, petitioner was represented by different counsel at the time. A defense theory is seldom developed at this stage. Trial counsel, having had the advantage of subsequent discovery, may well have had a very different approach to this witness. Evidence Code section 1291 subd. (a), holds that "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and ... (2) The party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had a right and opportunity to cross-examine the declarant with an interest and motive similar to which he has at the hearing." (Emphasis added. And see People v. Sanders, supra, 11 Cal. 4th 475, 523.)

Moreover, one of the fundamental elements of the right to confront and cross-examine one's accuser is

11

compelling the witness to stand before the jury so that it may judge for itself her demeanor whether her testimony is worthy of belief. (People v. Louis (1986) 42 Cal. 3d 969, 982.) A reading by a police officer from a cold transcript is no substitute for this important right, especially where the witness is the prosecutrix who has previously lied in discussing the case with the police. The prosecution in this case essentially received a wind fall by not exposing a lying prostitute to cross-examination at trial, relying instead on the transcript of the former testimony. The prosecution likely hoped their mild efforts to locate the witness were sufficient to demonstrate unavailability for purposes of using the transcript. However, for the reasons stated, the efforts were insufficient.

Attachment #4

Ground #2  Supporting Facts

Continued

## Ground #2 Supporting Facts Continued:

a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

(Kimmelman v. Morrison, 477 U.S. 365, 374.)

The merits of petitioner's Fourth Amendment claims are set forth in Exhibit 1 . Moreover, petitioner asserts the outcome would have been more favorable had the claims been litigated by counsel. The illegal seizure of petitioner's vehicle revealed physical evidence which corroborated the testimony of the prostitutes, and the vehicle itself was identified as the one used by the perpetrator of the assaults and robberies. The purse recovered in the illegal inventory search contained military identification of a former prostitute, and led to the discovery of her and the filing of a charge of receiving and concealing stolen property. The knife found inside petitioner's trunk, under the spare tire, was identified as the weapon used by the rapist.

These items represented the only physical evidence corroborating the version of events offered

1

by the prostitutes. Almost assuredly, the outcome
would have been more favorable absent the tainted
evidence. In fact, the charge of receiving and
concealing stolen property could not have been filed
without the contents of the purse seized from
petitioner's vehicle.

   And while petitioner's counsel, by filing a motion
pursuant to Penal Code section 1538.5, recognized
the importance of attempting to suppress the fruits
of the seizure of the automobile, he failed to present
at least three meritorious arguments for suppression.
There can be no claim, then, that this was a
tactical choice by counsel. (See People v. Ledesma,
supra, 43 Cal. 3d 171, 218.)

   Counsel's performance fell below that of a
reasonably competent attorney acting as his
client's advocate. The omitted arguments were
meritorious and, had they been properly litigated,
would have rendered petitioner a more favorable
result.

2

# Exhibit #1

Meritorious Suppression Arguments
Attorney Failed To Litigate

## II

**Vehicle Code section 22655.5, relied upon by police
to effect a warrantless seizure of appellant's
vehicle from his driveway is unconstitutional; the
seizure therefore violated the Fourth Amendment.**

*Background*

On July 17, 2003, police seized appellant's vehicle from the driveway of his

residence. (PHRT 198, 222, 225, 232; RT 846, 849.) This warrantless seizure was

performed under the authority of Vehicle Code section 22655.5.

*Applicable Law*

Vehicle Code section 22655.5 holds,

> A peace officer, as defined in Chapter 4.5 (commencing with
> Section 830) of Title 3 of Part 2 of the Penal Code, may remove a
> motor vehicle from the highway *or from public or private property*
> within the territorial limits in which the officer may act under the
> following circumstances:
> (a) When any vehicle is found upon a highway or public or
> private property and a peace officer has probable cause to believe that
> the vehicle was used as the means of committing a public offense.
> (b) When any vehicle is found upon a highway or public or private
> property and a peace officer has probable cause to believe that the vehicle
> is itself evidence which tends to show that a crime has been committed or
> that the vehicle contains evidence, which cannot readily be removed,
> which tends to show that a crime has been committed.

(Emphasis added.)

*Legal Analysis*

It is true that counsel did not challenge the constitutionality of this statute in the

trial court. However, in this instance, the argument is not forfeited. This court maintains

its authority to review constitutional claims such as this, even though not raised below.

11

(*Hale v. Morgan* (1978) 22 Cal.3d 388, 398; *People v. Brown* (1996) 42 Cal.App.4th

461, 471; *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1061.)  This includes

challenging the constitutionality of a statute. (*People v. Hines* (1997) 15 Cal.4th 997,

1061; *People v. Samuel V.* (1990) 225 Cal.App.3d 511.)

    The Fourth Amendment protects citizens against unreasonable searches and

seizures. A warrantless search is presumed to be unreasonable and places the burden

upon the prosecution to establish an exception to the warrant clause. (*Badillo v. Superior

Court* (1956) 46 Cal.2d 269, 27; *People v. Williams* (1988) 45 Cal.3d 1268, 1300.)

    Section 22655.5 authorizes police to seize, without a warrant, a vehicle from

private property and is therefore unconstitutional.  It is fundamental that a state

legislative statute cannot trump the federal Constitution. (See, e.g., *Stenberg v. Carhart*

(2000) 530 U.S. 914, and *Alden v. Maine* (1999) 527 U.S. 706.)

    A similar argument was raised in *People v. Auer* (1992) 1 Cal.App.4th 1664, the

lone reported case addressing section 22655.5.  The appellant in *Auer* asserted that a

literal construction of section 22655.5 would subject vehicles to a warrantless seizure for

minor infractions. (*Id.* at 1668.) However, in that case, the appellant was observed

driving his vehicle on a public street by an officer who knew that his driver's license had

been suspended. When he pulled into a McDonald's parking lot, officers stopped him

and eventually impounded his car.  The court refused to speculate how the statute may be

used in other situations which would render it unconstitutional.

        "[O]ne to whom application of a statute is constitutional will
not be heard to attack the statute on the ground that impliedly it might

12

also be taken as applying to other persons or other situations in which
its application might be unconstitutional." (*United States v. Raines* (1960)
362 U.S. 17, 21.)

(*Id.* at 1668.)

Appellant argues that the statute is invalid on its face, as it authorizes warrantless

seizures of vehicles located on private property, and as applied here.

> The Fourth Amendment of the United States Constitution,
> which is enforceable against the states as a component of the
> Fourteenth Amendment's guaranty of due process of law (*Mapp v. Ohio*
> (1961) 367 U.S. 643, 643-660, (Mapp )), provides in relevant part:
> "The right of the people to be secure in their persons, houses, papers
> and effects, against unreasonable searches and seizures, shall not be
> violated...." The United States Supreme Court has interpreted the Fourth
> Amendment as requiring state and federal courts to exclude evidence
> that government officials obtained in violation of the amendment's
> protections. (*Mapp, supra*, 367 U.S. at p. 655.) One of those protections
> is that a government official must obtain a warrant from a judicial
> officer before conducting a search or seizure. "The point of the Fourth
> Amendment, which often is not grasped by zealous officers, is not that
> it denies law enforcement the support of the usual inferences which
> reasonable [people] draw from evidence. Its protection consists in
> requiring that those inferences be drawn by a neutral and detached
> magistrate instead of being judged by the officer engaged in the often
> competitive enterprise of ferreting out crime.... [Therefore,] [w]hen
> the right of privacy must reasonably yield to the right of search is, as
> a rule, *to be decided by a judicial officer, not by a policeman or
> government enforcement agent.*" (*Johnson v. United States* (1948) 333
> U.S. 10, 13-14, fn. omitted.)

(*People v. Williams* (1999) 20 Cal.4th 119, 125. Emphasis added.)

By enacting section 22655.5, the legislature has replaced the Fourth Amendment's

requirement that a probable cause determination be made by a judicial officer, and instead

granted such authority to every peace officer in the state.  Such statute is, in effect, a

prohibited general warrant, also known as a "writ of assistance," to seize private vehicles

13

from private property without a warrant based on probable cause or other exigent

circumstance as determined by any police officer in California. (See *Stanford v. Texas*

(1965) 379 U.S. 476, 481; *Marcus v. Search Warrants* (1961) 367 U.S. 717, 724-729;

and, *Boyd v. United States* (1886) 116 U.S. 616, 625.)

It is true that the United States Supreme Court has recognized that there is a

reduced expectation of privacy in motor vehicles. "If a car is readily mobile and probable

cause exists to believe it contains contraband, the Fourth Amendment . . . permits police

to search the vehicle without more." (*Pennsylvania v. Labron* (1996) 518 U.S. 938, 940;

*California v. Carney* (1985) 471 U.S. 383, 393.) The vehicle in *Labron* was located in

the defendant's private driveway. However, in this and similar cases (see, e.g., *People v.*

*O'Brien* (1979) 89 Mich. App. 704, 714-716, and *Thims v. Com.* (1977) 218 Va. 85, 89-

92), police formed probable cause based on a particularized suspicion as to the

circumstances of the individual case, rather than a statute granting them sweeping powers

to seize vehicles from private property.

It is also true that areas such as an open parking facility or a private driveway

provide little or no expectation of privacy. (*People v. Edelbacher* (1989) 47 Cal.3d 983,

1015; *People v. Zichwic* (2001) 94 Cal.App.4th 944, 953; *United States v. Garcia* (9th Cir.

1993) 997 F.2d 1273, 1279-1280; *United States v. Evans* (7th Cir. 1994) 27 F.3d 1219,

1228-1229; *United States v. Ventling* (8th Cir. 1982) 678 F.2d 63, 65-66.) However,

the Fourth Amendment protects property as well as privacy. In *Soldal v. Cook County*

(1992) 506 U.S. 56, the court determined that merely because a mobile home was seized

14

from an open parking area in which the owner has no privacy interest, the seizure

nonetheless violated the Fourth Amendment.

> The [Fourth] Amendment protects the people from unreasonable
> searches and seizures of "their persons, houses, papers, and effects."
> This language surely cuts against the novel holding below, and our cases
> unmistakably hold that *the Amendment protects property as well as
> privacy.* [Fn omitted.] This much was made clear in *Jacobsen, supra*,
> [(1984) 466 U.S. 109] where we explained that the first Clause of the
> Fourth Amendment "protects two types of expectations, one involving
> 'searches,' the other 'seizures.' A 'search' occurs when an expectation
> of privacy that society is prepared to consider reasonable is infringed.
> A 'seizure' of property occurs where there is some meaningful interference
> with an individual's possessory interests in that property." 466 U.S.,
> at 113. (footnote omitted).

(*Id.* at 62. Emphasis added.)

> The court went to explain that,

> [H]aving concluded that chemical testing of powder found in a
> package did not compromise its owner's privacy, the Court in *Jacobsen*
> did not put an end to its inquiry, as would be required under the view
> adopted by the Court of Appeals and advocated by respondents. Instead,
> adhering to the teachings of *United States v. Place*, 462 U.S. 696, (1983),
> it went on to determine whether the invasion of the owners' "possessory
> interests" occasioned by the destruction of the powder was reasonable
> under the Fourth Amendment. *Jacobsen, supra*, at 124-125. In *Place*,
> although we found that subjecting luggage to a "dog sniff" did not
> constitute a search for Fourth Amendment purposes because it did not
> compromise any privacy interest, taking custody of Place's suitcase was
> deemed an unlawful seizure for it unreasonably infringed "the suspect's
> possessory interest in his luggage." 462 U.S., at 708. Although lacking
> a privacy component, the property rights in both instances nonetheless
> were not disregarded, but rather were afforded Fourth Amendment
> protection.

(*Id.* at 64.)

In this case, while appellant may have had no privacy interest in his vehicle parked

in his driveway, he nonetheless maintained a possessory interest which was violated when

police executed a warrantless seizure of his vehicle based on section 22655.5. The

statute is unconstitutional under the Fourth Amendment, and the seizure of appellant's

vehicle was unlawful. The evidence seized from the vehicle should have been suppressed

as fruit of the poisonous tree. (*Wong Sun v. United States* (1963) 371 U.S. 471; *People v.*

*Williams, supra,* 45 Cal.3d 1268.)

### III

**The search of a closed purse found during an inventory**
**search of appellant's vehicle was unreasonable, as police**
**failed to demonstrate that they had, and followed, established**
**procedures for conducting an inventory search of a closed**
**container found in a vehicle.**

*Background*

Having seized appellant's vehicle on July 19, 2003, police then conducted an

"inventory search" as to its contents. (PHRT 198, 225.) During the search, police found a

woman's purse in the trunk of the vehicle. The purse was opened, and a woman's military

identification card was found inside. (PHRT 234; RT 846.) While police claimed the

inventory search was conducted pursuant to established department guidelines, there was

no showing that the closed purse was opened and searched pursuant to any such

procedures.

*Applicable Law*

In *Colorado v. Bertine* (1987) 479 U.S. 367, the high court recognized that police

have a legitimate interest in taking an inventory of the contents of a seized vehicle,

16

including closed containers inside that vehicle, before towing it. This inventory serves "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Id.* at p. 372.) The court stated that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." (*Id.* at 371.)

*Legal Analysis*

Defense counsel filed a motion challenging the inventory search as a "ruse" to search for evidence. (CT 46.) He did not, however, assert the specific argument raised here regarding closed containers within the vehicle, even though he cited the decisions in *Colorado v. Bertine, supra,* 469 U/S. 367 and *South Dakota v. Opperman* (1976) 428 U.S. 364. (CT 50-51.) Appellant's claim here merely invites the court "to draw an alternative legal conclusion . . . from the same information presented to the trial court." (*People v. Yeoman* (2003) 31 Cal.4th 93, 133; accord, *Stutson v. United States* (1996) 516 U.S. 193, 196.) Should the court nevertheless find that this may waive the argument, appellant asserts below (in Argument V) that counsel was constitutionally deficient for failing to raise the issue below.

In *Colorado v. Bertine,* the court,

> "also recognized the risk that police might use an inventory of this kind as a pretext for searching a vehicle for contraband or other evidence. (*Id.* at pp. 375-376.) Accordingly, the court emphasized that police must "follow[ ] standardized procedures." (Id. at p. 372, see also *id.* at p. 374, fn. 6.) "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." (*Id.* at p. 374, 107 S.Ct. 738.)

17

(*People v. Williams, supra,* 20 Cal.4th 119, 139. And see *South Dakota v. Opperman, supra,* 428 U.S. 364, 371-374.)

In *Florida v. Wells* (1990) 495 U.S. 1, the Supreme Court affirmed the same principle. There, the police inventoried a car's contents and found marijuana in a locked suitcase in the trunk. (*Wells, supra,* 495 U.S. at p. 2.) The court concluded that the trial court should have suppressed the evidence because police had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." (Id. at pp. 4-5.) The court added, "Our view that standardized criteria [citation] or established routine [citation] must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory." (*Id.* at p. 4.)

As in *People v. Williams, supra,* the record here indicates that the police had a policy requiring them to inventory the contents of a vehicle before towing it, but the record contains no evidence of any policy on the opening of closed containers. (*Wells, supra,* 495 U.S. at p. 3.) Of course, *Wells* does not require a written policy governing closed containers or a policy that leaves no room for police discretion, but the record must at least indicate that police were following some "standardized criteria" or "established routine" when they elected to open the containers (*id.* at p. 4), and the record here fails to do so. (*People v. Williams, supra,* 20 Cal.4th at 125.)

Without a showing that the police department had established procedures

18

governing the opening of closed containers encountered during an automobile inventory search, and that such guidelines were followed in this case, the search of the purse was unreasonable under the Fourth Amendment. The evidence seized from inside the purse should therefore have been suppressed.

## IV

**The search of appellant's vehicle executed on August 6, 2003, was based on a warrant issued on July 23, 2003, and therefore exceeded the ten day time limit of Penal Code section 1534 subd. (a)**

*Background*

Appellant's vehicle was initially seized, pursuant to Vehicle Code section 22655.5, on July 17, 2003. (PHRT 198, 225.) Police also obtained a search warrant covering appellant's vehicle, on July 23, 2003. (PHRT 198.)

On August 6, 2003, appellant's vehicle was subjected to a forensic examination and thorough search for evidence. (RT 198.) A knife and a pair of women's underwear were found inside the trunk, under the spare tire. (RT 198.)

*Applicable Law*

Penal Code section 1534 subd. (a) states, in pertinent part:

A search warrant shall *be executed and returned within 10 days* after the date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void. . .

19

(Emphasis added.)

*Legal Analysis*

As with the argument set forth above, trial counsel did not include this issue in the suppression motion filed in the trial court.  However, the facts necessary to resolve this argument are set forth in the record and are undisputed.  A theory which presents a pure question of law based on undisputed facts in the record may be raised for the first time on appeal. (*People v. Yeoma, supra,* 31 Cal.4th 93, 118; *People v. Borland* (1996) 50 Cal.App.4th 124, 129; *People v. Whitfield* (1993) 19 Cal.App.4th 1652, 1657, fn. 6; *People v. Carr* (1974) 43 Cal.App.3d 441, 444-445.)  Should the court nevertheless find that this issue was forfeited, appellant argues below that counsel's omission resulted in ineffective assistance of counsel.

In California, as in many other jurisdictions, a warrant expires 10 days after its issuance by a magistrate. (Penal Code section 1534 subd. (a).)  Filing a return is "essentially ministerial in nature" and the courts have found delays in the return of a search warrant which have exceeded the 10-day period, however calculated, as nonprejudicial. (See, e.g., *People v. Couch* (1979) 97 Cal.App.3d 377, 380.)

 "But '[f]ailure to execute a warrant within the ten-day statutory period may not be excused as a mere ministerial or clerical aspect of search warrant proceedings' (*People v. De Jesus* (1984) 125 Misc.2d 963 [480 N.Y.S.2d 807, 809],  *Sgro v. United States* (1932) 287 U.S. 206.)" (*People v. Clayton* (1993) 18 Cal.App.4th 440, 446.)

That this is a state law-based rule does not save the violation from suppression of

20

the evidence seized, under California Constitution, art. I, section 28 subd. (d). This is because, by operation of state law, the warrant had expired. There was, in effect, *no warrant*. A warrantless search is an unreasonable search under the Fourth Amendment, unless it meets one of the recognized exceptions.

Appellant is aware of cases such as *Texas v. White* (1975) 423 U.S. 67, *Chambers v. Maroney* (1970) 399 U.S. 42, and *United States v. Garcia* (9th Cir. 2000) 205 F.3d 1182, 1187-1188, each holding that a vehicle may be searched upon probable cause, even after it has been impounded and is in police custody. However, in each case the vehicle was searched within hours of being impounded. In this case, the vehicle was searched, under the purported authority of an expired warrant, *nearly three weeks later*. And this followed the previous inventory search.

The expired warrant relied upon for the August 6, 2003, search of appellant's vehicle was the legal equivalent of no warrant at all. Under the Fourth Amendment, the search was unreasonable. The knife and other items found in this search should have been suppressed.

**V**

**Appellant's counsel was ineffective for failing to litigate
the previously described Fourth Amendment issues.**

*Background*

On September 9, 2003, appellant's first lawyer, Stephen Brodsky, filed a motion to suppress evidence pursuant to Penal Code section 1538.5 (CT 46.) The motion alleged that the warrantless inventory search of appellant's vehicle violated the Fourth

21

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **Christopher Adame** | **'08 CV 787 H LSP** **James Tilton; Secretary, California Department of Corrections and Rehabilitation** |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Imperial**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Pro Se
# V64509 PO Box 5007
Calipatria, CA 92233

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28 U.S.C. 2254

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
|  | **PERSONAL INJURY** | **PERSONAL INJURY** |  |  |  |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 315 Airplane Product Liability |  | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 330 Federal Employers' Liability |  | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract |  | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment |  | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act |  |  |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other |  |  | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property |  | ☐ 550 Civil Rights |  |  | ☐ 890 Other Statutory Actions |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|

DATE  4/30/08   150366  MS
              4/30   $5

SIGNATURE OF ATTORNEY OF RECORD

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 150366     — MS

April 30, 2008
12:19:06

Habeas Corpus
USAO #.: 08-CV-0787-H HEBEAS CORPUS
Judge..: MARILYN L HUFF
Amount.:
                            $5.00 CA


Total—>   $5.00


FROM: CHRISTOPHER ADAME
       VS. JAMES TILTON, SECRETARY
       HEBEAS CORPUS