1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  DANIEL ROGERS
   Deputy Attorney General
5  KYLE NIKI SHAFFER, State Bar No. 122374
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7  P.O. Box 85266
   San Diego, CA 92186-5266
8  Telephone: (619) 645-2226
   Fax: (619) 645-2191
9  Email: Niki.Shaffer@doj.ca.gov

10 *Attorneys for Respondent*

11

12          IN THE UNITED STATES DISTRICT COURT

13        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

15  **CHRISTOPHER ADAME,**                 08cv0787 H (CAB)

16                        *Petitioner*,

17        **v.**                            **MEMORANDUM OF POINTS &
                                            AUTHORITIES IN SUPPORT OF
18  **MATTHEW CATE, *Secretary*,**          ANSWER TO PETITION FOR
                                            WRIT OF HABEAS CORPUS**
19                      *Respondent*.

20

21                  **STATEMENT OF THE CASE** [1]

22

23          Following a jury trial, Petitioner was convicted of forcible rape (Cal. Penal Code

24  § 261(a)(2)) (count 1), forcible oral copulation (Cal. Penal Code § 288a(c)) (count 2), felony false

25  imprisonment (Cal. Penal Code §§ 236, 237(a)) (count 3), and robbery (Cal. Penal Code § 211)

26  ———————————————————————————————

27          1. Respondent is lodging copies of the relevant state-court records in this case under separate
    cover. References to the Clerk's Transcript, which constitutes Lodgment 1, will be designated as
28  "CT." Citations to the Reporter's Transcripts, which constitute Lodgment 2, will be referred to as
    "RT."

1  (count 4) of victim Erin.  In addition, the jury found Petitioner guilty of a series of offenses against

2  a second victim, Pamela, namely forcible rape (Cal. Penal Code § 261(a)(2)) (count 5), forcible oral

3  copulation (Cal. Penal Code § 288a(c)) (count 6), and felony false imprisonment (Cal. Penal Code

4  § 236, 237(a)) (count 7).  The jury also found Petitioner guilty of assaulting another victim, Roxanne,

5  with a deadly weapon with force likely to cause great bodily injury (Cal. Penal  Code § 245(a)(1)

6  (count 8).  Finally, with respect to a fourth victim, Stephanie, the jury found Petitioner guilty of

7  receiving stolen property (Cal. Penal Code § 496(a)) (count 11).  The jury also found true various

8  sentencing-enhancement allegations.  On January 28, 2005, the trial court sentenced Petitioner to an

9  aggregate term of 74 years and 8 months to life in prison.  (Lodgment 6, at 6-7.)

10      Petitioner appealed the judgment.  (Lodgments 3-5.)  On November 3, 2006, the state

11  appellate court filed an unpublished opinion in case number D045872, unanimously affirming the

12  judgment.  (Lodgment 6.)

13      Petitioner filed a petition seeking review in the California Supreme Court in case number

14  S148730.  That petition was denied on February 14, 2007.  (Lodgments 7, 8.)

15      Petitioner filed the instant Petition in this Court on April 30, 2008.  This Court filed an

16  Order requesting Respondent to respond to the Petition on May 5, 2008.

17

18                    **STATEMENT OF FACTS** [2]

19      **The Offenses Against Erin**

20      On the evening of May 27, 2003, Erin was working as a prostitute on El Cajon Boulevard

21  in the City of San Diego.  Petitioner approached her and asked her if she was "working."  Erin

22  indicated that she was, and got into his car.  Petitioner drove to a parking lot in Mission Valley.

23      Petitioner agreed to pay Erin $60 to have sex.  When Erin asked for the money, Petitioner

24  responded that he would give it to her in a minute.  Petitioner told her to get in the back seat, and she

25  did so.  Petitioner then got in the back seat and pulled out a knife from a pocket on the seat back.

26  Petitioner held the knife to Erin's throat and told her to give him her money.  Erin complied.

27  _____

28      2.  The statement of the facts is derived from the state appellate court's opinion filed on
    November 3, 2006.  (Lodgment 6; *see Garvin v. Farmon*, 258 F.3d 951, 952 (9th Cir. 2001).)

1  Petitioner demanded that Erin give him a "blow job" and also demanded that she have vaginal

2  intercourse with him. Erin complied with these demands as well. After Petitioner finished sexually

3  assaulting Erin, he ordered her out of the car and drove away.

4

5  **The Offenses Against Pamela**

6  On the evening of June 8, 2003, Pamela was sitting at a bus stop on El Cajon Boulevard,

7  working as a prostitute. Petitioner approached her in his car and told her that he wanted her to orally

8  copulate him. Pamela and Petitioner agreed on a price for her services, and Pamela got into the car.

9  Petitioner drove to an underground parking garage in Mission Valley. After they arrived at the

10  garage, Pamela asked to be paid. Petitioner hesitated, then grabbed a knife and told her to "shut up

11  and suck his dick." Petitioner held the knife to Pamela's face while she orally copulated him. After

12  "a few minutes," Petitioner told Pamela to take off her jeans, but Pamela refused. Petitioner ordered

13  Pamela out of the car, and again ordered her to take off her jeans. Pamela got out of the car and took

14  off her jeans. Petitioner then raped Pamela by penetrating her vaginally from behind with his penis.

15  Pamela was crying during the rape. After approximately 10 minutes, Petitioner stopped raping

16  Pamela, and she left the area on foot. Petitioner drove away.

17

18  **The Offense Against Roxanne**

19  In July 2003, Roxanne was working as a prostitute on El Cajon Boulevard. Petitioner

20  approached Roxanne while driving his car, and nodded at her. Roxanne got into Petitioner's car.

21  Petitioner drove to an underground parking structure in Mission Valley. Once they arrived at the

22  parking garage, Petitioner and Roxanne discussed prices for vaginal sex and for oral copulation.

23  Roxanne told Petitioner that oral copulation would cost $50 and that sexual intercourse would

24  cost $100. Petitioner told Roxanne that he wanted to have intercourse.

25  Petitioner and Roxanne got in the back seat of the car and had vaginal intercourse. While

26  they were having sex, they heard a woman's voice coming from outside of the car. Petitioner pulled

27  out a knife from a pocket in the car, held it to Roxanne's neck, and ordered Roxanne out of the car.

28  ///

1   Roxanne complied, but inadvertently left her purse in the car.  She asked Petitioner for the purse,

2   but he drove away.

3

4       **The Offense Against Stephanie**

5       In February 2001, Stephanie was working as a prostitute in Oceanside.  Petitioner

6   approached Stephanie, and she got into his car.  Petitioner and Stephanie agreed on a price for sex.

7   Petitioner then drove to a residential neighborhood and parked.  Petitioner and Stephanie got in the

8   back seat of his car.  Petitioner started to become a "little bit too physical," and Stephanie became

9   frightened.  She got out of the car, without her purse.  When she asked Petitioner for her purse,

10  Petitioner held the purse out of the car and told Stephanie to come and get it.  Petitioner drove off

11  without allowing Stephanie to retrieve the purse.  Stephanie's military identification card was in

12  her purse.

13

14      **The Defense**

15      Petitioner testified and admitted to having had contact with all of the women. Petitioner

16  said he had consensual intercourse with both Erin and Roxanne, but claimed that he had disagree-

17  ments with each of them regarding their fees, afterward.  Petitioner admitted that he had used a knife

18  during each of these two incidents to force the women out of his car.

19      Petitioner testified that he paid Pamela for oral sex.  After he paid her, Petitioner received

20  a call from his girlfriend on his cellular telephone.  Petitioner's girlfriend said she was annoyed with

21  him for being late.  Petitioner decided that he no longer wanted to have oral sex with Pamela and

22  demanded that Pamela return his money.  When she refused, he grabbed the money from her breast

23  area, took her purse, and threw the purse from the car.  When Pamela went to retrieve the purse,

24  Petitioner drove off.

25      Petitioner admitted that he had picked up Stephanie, intending to pay her to have sex

26  with him.  However, after Stephanie got into Petitioner's car, he became concerned that she might

27  be a minor.  Petitioner asked her if she could prove that she was an adult.  After examining her

28  identification, Petitioner realized that she was only 16.  He asked Stephanie to get out of his car.

1  Stephanie became angry and got out of the car. She left her identification card behind. Petitioner

2  later put Stephanie's identification card in the trunk of his car.

3

4  **ARGUMENT**

5  **I.**

6  **PETITIONER HAS FAILED TO PRESENT A VIABLE CLAIM UNDER**
   **THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT**

7  **BECAUSE HE CANNOT DEMONSTRATE THAT THE STATE**
   **COURTS' RESOLUTION OF HIS CLAIMS WAS UNREASONABLE**

8  **WITHIN THE MEANING OF THE ACT**

9      Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and

10 the provisions of 28 U.S.C. § 2254(d) and (e), this Court must evaluate a habeas corpus petition

11 differently than a more typical civil action. *See Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir.

12 2004) (summarizing the statutory limitations on habeas relief). The AEDPA contains the elements

13 that habeas petitioners must prove by a preponderance of the evidence, but it is not an appellate

14 standard of review. *See Lambert*, at 964-965.

15      When petitioners do not challenge a state court's determination of the evidence, they

16 may receive habeas relief "only if" they establish that the state-court decisions were "contrary to,

17 or involved an unreasonable application of, clearly established Federal law, as determined by

18 the Supreme Court of the United States." *Price v. Vincent*, 538 U.S. 634, 642-643 & n.2, 123 S. Ct.

19 1848, 155 L. Ed. 2d 877 (2003) (comparing and contrasting decisions from other state and federal

20 courts in demonstrating that a particular decision was objectively reasonable). In determining what

21 constitutes "clearly established federal law" for purposes of § 2254(d)(1), only Supreme Court

22 holdings from the time the state court rendered its decision are controlling, but not dicta and not

23 circuit-court authority. *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653-654, 166 L. Ed. 2d 482

24 (2006); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). And only

25 some Supreme Court holdings are relevant, because holdings that do not bind the state courts,

26 such as an application of the Supreme Court's supervisory power, are "off the table" for AEDPA

27 purposes. *Early v. Packer*, 537 U.S. 3, 10, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

28 ///

By contrast, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76-78, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (reversing a federal court's determination that there was insufficient evidence to support a murder conviction under Ohio law). So long as a state court's application of state law was not an unforeseeable expansion of prior decisions, a petitioner may not receive federal relief for issues of state law. *See id.* at 76-77. A state court's resolution of a federal issue by applying state law, moreover, does not suggest any reason to grant federal relief. *Early v. Packer*, 537 U.S. at 8.

Reasonable factual determinations by state courts, including state appellate courts, must be accepted by this Court. *Schriro v. Landrigan*, ___ U.S. ___, 127 S. Ct. 1933, 1939-1940, 167 L. Ed. 2d 836 (2007) (applying 28 U.S.C. § 2254(d)(2)). Findings of historical fact, including inferences properly drawn from such facts, are entitled to the statutory presumption of correctness now contained in 28 U.S.C. § 2254(e)(1). *Schriro v. Landrigan*, 127 S. Ct. at 1939-1940; *Marshall v. Lonberger*, 459 U.S. 422, 434-435, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) (federal courts may not disturb implicit credibility determinations that are necessary to support a state-court ruling).

## II.

**THE STATE COURTS REASONABLY DETERMINED THAT THE ADMISSION OF PAMELA'S PRELIMINARY-HEARING TESTIMONY DID NOT VIOLATE PETITIONER'S SIXTH AMENDMENT RIGHT TO CONFRONTATION**

Petitioner contends the state courts erred in finding the prosecution exercised due diligence in attempting to secure the trial testimony of Pamela, a prerequisite to admission of her preliminary-hearing testimony pursuant to California Evidence Code section 1291. Petitioner maintains the admission of Pamela's preliminary-hearing testimony violated his Sixth Amendment right to confront and cross-examine witnesses. (Pet. at 6, Att. 3.) The state trial and appellate courts both reasonably concluded the prosecution exercised due diligence in attempting to locate Pamela before it declared her to be unavailable as a witness; accordingly, evidence of Pamela's preliminary-hearing ///

1 testimony was properly admitted at trial, and Petitioner's Sixth Amendment right to confrontation

2 was not violated in this case.

3

4     **A.   Factual Background**

5         On August 23, 2004, the trial court conducted a hearing to establish whether the

6 prosecution had exercised due diligence in attempting to secure Pamela's appearance at trial.

7 Catherine Garcia, an investigator for the San Diego County District Attorney's Office, testified

8 that Pamela appeared to testify at the preliminary hearing in this case, which was conducted on

9 September 17, 2003. For purposes of that hearing, Garcia sent a subpoena to Pamela's sister's

10 house in San Diego. At that time, Pamela kept in sporadic touch with her sister. (2 RT 8.) On the

11 morning of the preliminary hearing, the investigator personally picked Pamela up and drove her

12 to court. (2 RT 8.)

13         After the preliminary hearing, the investigator continued to send subpoenas to Pamela's

14 sister's home as the trial date changed. She also had vice officers personally serve Pamela on

15 El Cajon Boulevard. Pamela constantly moved around and stayed in many different hotels.

16 (2 RT 9.) A final trial date was set for August 11, 2004. At that time, Investigator Garcia learned

17 that Pamela had failed to appear at court dates in connection with her arrest in May. There was an

18 outstanding warrant for Pamela's arrest. The investigator served a subpoena at Pamela's sister's

19 house to appear for the August trial date because that was the only place she knew Pamela

20 might eventually turn up. (2 RT 10-11.)

21         Pamela's sister eventually called Investigator Garcia, and reported that Pamela had

22 moved to Las Vegas with her boyfriend. Pamela refused to give her exact location in Las Vegas.

23 The sister told her that she needed to call Investigator Garcia, but Pamela responded that she did

24 not intend to do so, and planned to remain in Las Vegas indefinitely. (2 RT 12-13.)

25         Investigator Garcia then pursued numerous areas of investigation with both California

26 and Nevada databases concerning both Pamela and her boyfriend. No trace of either Pamela or

27 her boyfriend was discovered with either the Department of Motor Vehicles or Social Security.

28 ///

1  Investigator Garcia also checked with local hospitals to see if Pamela was a patient.  The results of

2  all of her searches were negative.  (2 RT 14-15.)

3          At the conclusion of the hearing, the trial court made the following findings:

4              It seems clear that Pamela does not want to come back from Las Vegas.
               She went to Las Vegas.  She wouldn't even tell her sister where she was.  So,
5              clearly, she's trying to escape somehow or another.  We know, from the offers
               of proof, that she's a prostitute.  We know she previously reported that this
6              defendant had committed a forcible oral copulation at knifepoint.

7              And so, the Court, I think, with some general common sense applied to
               this, can understand these kinds of things in these kinds of cases.  It seems to me
8              that certainly due diligence has been shown here and that every effort has been
               made to try to secure her appearance.  So, I will find that that has been satisfied
9              under 240 of the Evidence Code, which will allow her testimony to come in as
               former testimony at the preliminary examination.
10

11  (2 RT 27.)

12

13      **B.    Applicable Law**

14          In order to assess whether Petitioner's claim that his Sixth Amendment right to

15  confrontation was infringed in this case, it is helpful to consider the applicable provisions of the

16  California Evidence Code which were used in the determination of whether the disputed evidence

17  was admissible.  California Evidence Code section 1291 authorizes the admission of former

18  testimony of an unavailable witness if the party against whom it is offered was a party to the action

19  or proceeding in which the testimony was offered, and at the earlier proceeding had "the right

20  and opportunity to cross-examine the declarant with an interest and motive similar to that which

21  he has at the hearing." Cal. Evid. Code § 1291(a)(2).  California Evidence Code section 240 defines

22  "unavailable" to mean the declarant is absent from the hearing, "and the proponent of his or her

23  statement has exercised reasonable diligence but has been unable to procure his or her attendance

24  by the court's process." Cal. Evid. Code § 240(a)(5).

25          What constitutes reasonable diligence to secure the presence of a witness depends on the

26  facts of the individual case.  *People v. Sanders*, 11 Cal. 4th 475, 523, 905 P.2d 420, 46 Cal. Rptr. 2d

27  751 (1995).  "The term is incapable of a mechanical definition."  *Id.*  The court must consider the

28  totality of efforts of the proponent to obtain the presence of the witness.  *Id.*  An appellate court

1   independently reviews the trial court's determination that the prosecution's efforts to locate an absent

2   witness were sufficient to "justify an exception to the defendant's constitutionally guaranteed right

3   of confrontation at trial." *People v. Cromer*, 24 Cal. 4th 889, 901, 15 P.3d 243, 103 Cal. Rptr. 2d

4   23 (2001).

5        To establish that a witness is unavailable, the prosecution must show "reasonable or due

6   diligence in locating the witness." *Id.* at p. 897. A witness is not unavailable unless the prosecution

7   has made "'a good-faith effort to obtain [the witness's] presence at trial.'" *Id.*, quoting *Barber v.*

8   *Page*, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968). The prosecution, however, still

9   must demonstrate it undertook good-faith efforts to secure the attendance of the witness. *Barber*,

10  390 U.S. at 724.

11       The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal

12  prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[,]"

13  and applies to prosecutions in the state courts through the Fourteenth Amendment. *Pointer v. Texas*,

14  380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). However, "the right to confront and to

15  cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate

16  interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038,

17  35 L. Ed. 2d 297 (1973). Indeed, the Sixth Amendment permits the introduction at trial of a

18  witness's prior testimony where the witness is unavailable and the defendant has had a prior

19  opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct.

20  1354, 158 L. Ed. 2d 177 (2004).

21       As a prerequisite to a finding of unavailability for purposes of the Confrontation Clause,

22  the prosecution must have made a "good-faith effort" to obtain the witness's presence at trial.

23  *Barber*, 390 U.S. at 724-725. The United States Supreme Court itself has recognized that "the

24  Court's prior cases provide no further refinement of this statement of the rule," with only "certain

25  general propositions safely emerg[ing]." *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531,

26  65 L. Ed. 2d 597 (1980), overruled on other grounds by *Crawford*, 541 U.S. 36. Among these

27  propositions is the principle that, "if no possibility of procuring the witness exists (as, for example,

28  the witness' intervening death), 'good faith' demands nothing of the prosecution." *Ohio v. Roberts*,

448 U.S. at 74. Further, "if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation." *Id.* "The lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." *California v. Green*, 399 U.S. 149, 188-189 n.22, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (Harlan, J., concurring); *see also Ohio v. Roberts*, 448 U.S. at 74.

## C. The State Courts Reasonably Determined That Pamela Was Unavailable to Testify at Petitioner's Trial, and That the Admission of Her Prior Testimony Did Not Violate Petitioner's Constitutional Right to Confrontation

Petitioner maintains that his Sixth Amendment right to confrontation was violated by the admission of Pamela's preliminary-hearing testimony. (Pet. at 6, Att. 3.) The state trial court correctly concluded that the admission of evidence concerning Pamela's prior testimony did not violate Petitioner's right of confrontation, because Pamela was thoroughly cross-examined at the preliminary hearing. (2 RT 27, 32.) The state appellate court subsequently rejected Petitioner's claim that his Sixth Amendment right to confrontation had been violated, in the following discussion:

> Examining the considerations mentioned by the *Cromer* court, Pamela was clearly an important witness. The record establishes that the People timely began their search for her and also competently explored leads on her whereabouts. (See *Cromer, supra,* 24 Cal.4th at p. 904.) Garcia testified that the People pursued numerous avenues in an attempt to stay in communication with Pamela throughout the approximately year-long period between the preliminary hearing and the trial in this case. They provided Pamela with a pager and contact information, and updated her as to trial dates, using Garcia's voicemail. In addition, Garcia attempted to communicate with Pamela through police officers and through Pamela's sister. Garcia also had Pamela personally served with subpoenas or left them with Pamela's sister, on numerous occasions. Further, Buck spoke with Pamela by telephone in late June and informed her of the August 11 trial date. In short, although the People were not required to "to keep 'periodic tabs'" on Pamela, it appears that they attempted to do so in this case. [Citation.]

> After Pamela failed to appear for the August 11 court date, Garcia attempted to locate Pamela through her sister, her boyfriend, the Las Vegas Police Department, and San Diego vice detectives. Garcia also accessed numerous computer databases to attempt to locate Pamela. While we agree with [Petitioner] that the People had cause to be concerned that Pamela might not appear for the trial, Pamela also gave indications prior to the August 11 court date that she would in fact appear. After it became clear that Pamela did not plan to voluntarily attend the trial, the People increased their efforts to locate

1  her. Although [Petitioner] suggests various additional efforts that might have
   been undertaken, including sending investigators to look for Pamela in
2  Las Vegas, the failure to employ these other methods to attempt to locate
   Pamela does not mean that the People's efforts were not reasonable. [Citation.]
3
4      After independently considering the totality of the People's efforts to locate
   Pamela, we conclude that the People demonstrated due diligence in attempting
5  to obtain Pamela's presence at trial. We therefore conclude that the People
   established that Pamela was "unavailable" to testify at trial as defined in
6  [California] Evidence Code section 240,[7] and that the admission of Pamela's
   preliminary hearing testimony did not violate Petitioner's Sixth Amendment
7  right to confront and cross-examine his accuser.

8  (Lodgment 6, at 25-27.)

9      Based on the foregoing, this Court should deny the claim presented in ground one, because

10 the state courts reasonably rejected the claim within the meaning of 28 U.S.C. § 2254(d). Moreover,

11 any alleged error did not have a substantial and injurious effect or influence in determining the jury's

12 verdict in this case, because Pamela's preliminary-hearing testimony was not the only evidence of

13 the crimes Petitioner committed against her. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct.

14 1710, 123 L. Ed. 2d 353, 372 (1993); *see also* Lodgment 4, at 9; 5 RT 589-608, 619-625 (evidence

15 of Pamela's reports to police officers were consistent with her subsequent preliminary-hearing

16 testimony).

17 ────────────────────────────────

18 3. Footnote 7 in the original reads:

19     "In *Crawford v. Washington* (2004) 541 U.S. 36, 68, the United States
   Supreme court held, 'Where testimonial evidence is at issue . . . the Sixth
20 Amendment demands what the common law required: unavailability and a prior
   opportunity for cross-examination.' For the reasons stated in the text, we conclude
21 that Pamela was unavailable for trial. Further, the record establishes that [Petitioner]
   had a prior opportunity to cross-examine Pamela, at the preliminary hearing. While
22 [Petitioner] appears to argue that Pamela's preliminary hearing testimony was
   inadmissible at trial because his interest and motive in cross-examining her at the
23 preliminary hearing was different from his interest and motive at trial, the California
   Supreme Court has 'routinely allowed admission of the preliminary hearing
24 testimony of an unavailable witness.' (*People v. Smith* [2003] 30 Cal.4th [581] 611
   [68 P.3d 302, 134 Cal.Rptr.2d 1].) In this case, beyond noting that he was
25 represented by different counsel and speculating that his trial counsel, 'having had
   the advantage of subsequent discovery, may well have had a very different approach
26 to this witness,' [Petitioner] points to nothing to indicate that his interest and motive
   in cross-examining Pamela differed at the preliminary hearing and trial stages.
27 Accordingly, we reject this argument."
28

**III.**

**THE STATE COURTS REASONABLY DETERMINED THAT PETITIONER RECEIVED THE EFFECTIVE ASSISTANCE OF COUNSEL**

In his second claim, Petitioner asserts that his Sixth Amendment right to the effective assistance of counsel was violated, because his trial counsel failed to raise several arguments in support of the motion to suppress evidence which was considered and denied by the trial court in this case. (Pet., at 57, Att. 4.) The state courts reasonably rejected an identical contention in conclusions which are entitled to deference from this Court because they are neither contrary to *Strickland* nor to the facts presented in this case. 28 U.S.C. § 2254(d).

**A.  Applicable Law**

The burden of proving a claim of inadequate assistance of counsel rests with Petitioner. In order to establish entitlement to relief for ineffective assistance of counsel, Petitioner must show that:  (1) defense counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates; and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. *Strickland v. Washington*, 466 U.S. 668, 687-696, 104 S. Ct. 2052, 80 L. Ed. 2d 674, 693-699 (1984). California follows the *Strickland* analysis. *People v. Ledesma*, 43 Cal. 3d 171, 215-218, 729 P.2d 839, 233 Cal. Rptr. 404 (1987). The *Strickland* standard is "clearly established" for purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). *Williams v. Taylor*, 529 U.S. at 391; *Canales v. Roe*, 151 F.3d 1226, 1229, n.2 (9th Cir. 1998).

The scope of federal habeas review of ineffective-assistance-of-counsel claims under AEDPA is limited. *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000). Such claims must generally be analyzed under the unreasonable-application prong of 28 U.S.C. § 2254(d)(1). *Weighall v. Middle*, 215 F.3d 1058, 1062 (9th Cir. 2000). This Court must strongly presume that counsel's conduct was within the wide range of reasonable assistance and that counsel exercised acceptable judgment in all significant respects. *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990). When evaluating a *Strickland* claim, federal courts "need not decide whether counsel's performance was

1    deficient before determining whether any prejudice was suffered by the Petitioner because of the

2    alleged errors." *Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir. 1999). A habeas petitioner alleging

3    ineffective assistance of counsel bears a double burden to overcome the deference owed a trial

4    counsel's discretionary choices and the deference mandated by the AEDPA. *Yarborough v. Gentry*,

5    540 U.S. 1, 5-6, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003); *Woodford v. Visciotti*, 537 U.S 19, 25-27,

6    123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).

7

8         **B.   The State Appellate Court Reasonably Rejected Petitioner's Claim Because All of the Issues Petitioner Maintains Counsel Should Have Pursued Lack Merit**
9            **and Would Not Have Resulted in the Suppression of Evidence in This Case**

10        The state courts reasonably rejected Petitioner's claim, and Petitioner has failed to

11    demonstrate that the state courts' conclusions were unreasonable within the meaning of 28 U.S.C.

12    § 2254(d). The state appellate court specifically considered Petitioner's claim that he had received

13    the ineffective assistance of counsel in the following reasoned analysis:

14        A.   *The seizure and searches of [Petitioner's] car were lawful*

15          [Petitioner] claims the police illegally seized his car and performed two
         unconstitutional searches of the car. He argues that the statute on which police
16         relied to seize his car, [California] Vehicle Code section 22655.5, is both
         facially unconstitutional, and unconstitutional as applied in this case. In
17         addition, [Petitioner] maintains that police performed an unconstitutional
         inventory search of his car on July 19, 2003, and an unconstitutional evidentiary
18         search of his car pursuant to an expired warrant on August 6, 2003.

19          We conclude that Vehicle Code section 22655.5 is neither facially
         unconstitutional nor unconstitutional as applied in this case. We further
20         conclude that the seizure and the searches police performed fell within the
         automobile exception to the warrant requirement of the Fourth Amendment of
21         the United States Constitution, and that the seizure and searches of
         [Petitioner's] car were thus lawful.[[4]]
22

23        4. Footnote 3 in the original reads:

24          "[Petitioner] acknowledges that the "[Fourth Amendment] issues described
         in [his] brief were not litigated by [trial] counsel." Assuming for the sake of
25         argument that [Petitioner] forfeited his right to appellate review of such issues, we
         have discretion to consider his claims. (See *People v. Smith* (2003) 31 Cal.4th 1207,
26         1215.) We exercise that discretion and consider [Petitioner's] Fourth Amendment
         claims on the merits.
27

28          "In light of our rejection of all of [Petitioner's] Fourth Amendment claims,
                                               (continued...)

1          1.   *Factual and procedural background*

2          In September 2003, [Petitioner] filed a motion to suppress evidence, which
3    he claimed had been illegally obtained as a result of a police inventory search
     of his car in July 2003.  [Petitioner] claimed the warrantless search of his car
     was unconstitutional because it was performed in order to obtain evidence of a
4    crime, rather than to conduct an inventory of the car's contents.   In the
     alternative, [Petitioner] claimed the People had failed to establish that the
5    inventory search was conducted pursuant to standardized procedures.

6          The People filed an opposition in which they argued that a warrantless
     evidentiary search of a car is proper whenever police have probable cause to
7    believe the car contains evidence of a crime or is itself an instrumentality of a
     crime.  The People argued that the police had such probable cause in this case.
8    Alternatively, the People contended that the search was a proper inventory
     search.  Finally, the People maintained that although a search warrant was not
9    required, police obtained a warrant on July 23, 2003 to authorize an additional
     search of the car.  Thus, even if the initial search of [Petitioner's] car was
10   unlawful, all of the evidence seized  from [Petitioner's] car would have
     inevitably been discovered.

11
12         During [Petitioner's] preliminary hearing, the People offered the testimony
     of San Diego Police Detective Sharon McFalls, San Diego Police Sergeant
13   Kenneth Stewart, and San Diego Police Officer Stephen Shebloski, regarding
     the circumstances of the seizure and searches of [Petitioner's] car.  Detective
14   McFalls testified that on May 27, 2003, Erin told police that she had been
     sexually assaulted in a car whose license plates matched a car registered to
15   [Petitioner]. Erin also provided police with a physical description of the car.
     Roxanne told police on July 17, 2003 that a man had robbed her of her purse at
16   knifepoint in a car that matched the description of [Petitioner's] car.  Roxanne
     identified [Petitioner] as her assailant in a photographic lineup.

17         On July 19, 2003, after police had obtained Roxanne's photographic
     identification of [Petitioner] and the license plate information, they seized and
18   searched [Petitioner's] car. Sergeant Stewart testified that police "seized the car
     as evidence . . . and we searched for evidence in the [car]."   On cross-
19   examination, Sergeant Stewart testified that he believed police had probable
     cause to search [Petitioner's] car.  Stewart also testified on cross-examination
20   that [Petitioner's] car was seized pursuant to Vehicle Code section 22655.5.
     Officer Shebloski testified that after police seized [Petitioner's] car, it was
21   towed down the street.  Officer Shebloski then searched the car.  During his
     search, Shebloski discovered a woman's purse that contained Roxanne's
22   identification.

23         On July 23, 2003, police obtained a warrant to search [Petitioner's] house
     and car.  On August 6, police performed a further search of [Petitioner's] car at
24   their crime laboratory.  During the August 6 search, police discovered a knife
     and a pair of a woman's underwear in the trunk of [Petitioner's] car, under the
25

_____

26   4. (...continued)
27   we conclude that his trial counsel was not ineffective for failing to adequately raise
     these issues in the trial court.  (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1222
28   [finding no ineffective assistance where defense counsel reasonably could have
     concluded that requesting jury instruction would have been futile].)"

spare tire.  Erin, Pamela, and Roxanne identified the knife as the one [Petitioner] used during the offenses.  Police also found Stephanie's identification in the trunk of [Petitioner's] car during the August 6 search.  Between July 19 and August 6, [Petitioner's] car was secured in a locked location.

After hearing argument from defense counsel, the trial court denied the motion to suppress.  The court ruled, "there was clear, probable cause to seize and search this vehicle . . . [The police] seized the vehicle as evidence, which the police have a right to do."  The court also noted that most of the evidence from the car was obtained during the August 6 search, after the police had obtained a search warrant, and that [Petitioner] had not raised any challenge with respect to the warrant.  The court found that any evidence that was not discovered during the July 19 search would have been discovered during the August 6 search, and thus, that any items found during the July 19 search of the car were admissible pursuant to the inevitable discovery doctrine.  Finally, the court ruled that "clearly there was an inventory search," referring to the July 19 search.

2.    *The automobile exception to the warrant requirement of the Fourth Amendment*

Under the automobile exception to the warrant requirement of the Fourth Amendment, it is generally lawful for police to search a vehicle, without a warrant, if there is probable cause to believe the vehicle contains evidence of a crime. (E.g., *Pennsylvania v. Labron* (1996) 518 U.S. 938 [135 L.Ed.2d 1031] (*Labron*); U.S. v. Johns (1985) 469 U.S. 478 [83 L.Ed.2d 890] (*Johns*); *U.S. v. Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572] (*Ross*).)  In *Labron*, a police informant purchased drugs from the defendants at their farmhouse. (*Labron*, *supra*, 518 U.S. at p. 939.) Police observed the defendants walking to and from a truck that belonged to one of the defendants. (*Ibid*.)  After the defendants were arrested, the police searched the truck, which was parked in the driveway of the defendants' farmhouse. (*Ibid*.)  The United States Supreme Court held that the search did not violate the Fourth Amendment. (*Labron*, *supra*, 518 U.S. at p. 940.)  The court explained, "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." (*Ibid*.)  Although the court in *Labron* did not expressly discuss the legality of seizing the truck from a defendant's private property, numerous courts have concluded that police may seize vehicles that are located on private property, pursuant to the automobile exception. (E.g., *U.S. v. Brookins* (4th Cir. 2003) 345 F.3d 231, 238.)

In addition, "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. [Citations.] '[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized.' [Citation.] A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search. [Citations.]" (*Johns*, *supra*, 469 U.S. at p. 484.) The lawful scope of the search of an automobile extends to closed containers, when there is probable cause to believe that such containers may contain the object of the search. (*Ross*, *supra*, 456 U.S. at p. 824; accord, *California v. Acevedo* (1991) 500 U.S. 565, 579-580 [114 L.Ed.2d 619] [reaffirming *Ross*].)

3.   *[California] Vehicle Code section 22655.5 is neither facially unconstitutional nor unconstitutional as applied to the facts of this case*

[Petitioner] claims Vehicle Code section 22655.5 is both facially unconstitutional and unconstitutional as applied to the facts of this case.

a.  *General principles governing challenges to the constitutionality of a statute*

"""To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute. . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.'"" [Citation.]" (*People v. Luera* (2001) 86 Cal. App. 4th 513, 519.)

"'An as applied challenge [to the constitutional validity of a statute] may seek . . . relief from a specific application of a facially valid statute . . . to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute . . . has been applied . . . .  It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute . . . has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right. [Citations.]  When a criminal defendant claims that a facially valid statute . . . has been applied in a constitutionally impermissible manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction.   [Citation.]' [Citation.]" (*People v. Hagedorn* (2005) 127 Cal. App. 4th 734, 744-745.)

b. *Case law regarding the constitutionality of Vehicle Code section 22655.5*

Vehicle Code section 22655.5 provides in relevant part:

"A peace officer . . . may remove a motor vehicle from the highway or from public or private property within the territorial limits in which the officer may act under the following circumstances:

"(a) When any vehicle is found upon a highway or public or private property and a peace officer has probable cause to believe that the vehicle was used as the means of committing a public offense.

"(b) When any vehicle is found upon a highway or public or private property and a peace officer has probable cause to believe that the vehicle is itself evidence which tends to show that a crime has been committed or that the vehicle contains evidence, which cannot readily be removed, which tends to show that a crime has been committed."

In *People v. Auer* (1991) 1 Cal.App.4th 1664 (*Auer*), disapproved on another ground in *People v. Williams* (1999) 20 Cal.4th 119, 125, a police officer observed the defendant driving his car on a public street.  The officer knew that the defendant's driver's license was suspended.  (*Auer, supra,* 1 Cal.App.4th at p. 1667.)  After the defendant stopped his car in the parking lot

of a restaurant, the police officer approached the defendant and asked him if his license was suspended. During the encounter, the officer decided to impound the car. While conducting an inventory search of the car, the officer discovered various controlled substances. The trial court denied the defendant's motion to suppress, and a jury convicted the defendant of possession of controlled substances and driving with a suspended license. On appeal, the Court of Appeal considered whether the officer's impoundment of the defendant's vehicle was authorized pursuant to Vehicle Code section 22655.5. (*Ibid.*)

The *Auer* court began by rejecting the defendant's argument that Vehicle Code section 22655.5 was unconstitutional because it authorizes purportedly unconstitutional seizures based on facts not present in the *Auer* case:

> "Recognizing that [Vehicle Code] section 22655.5 facially authorizes the impoundment of his vehicle in the present circumstances, defendant argues a literal construction of the statute would authorize unreasonable seizures rendering it unconstitutional as violative of the Fourth Amendment. Defendant explains that a literal construction of [Vehicle Code] section 22655.5 would, for example, subject to seizure vehicles illegally parked or involved in illegal U-turns, each of which is an infraction and therefore a public offense (see Pen. Code, § 16). [¶] '[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.' [Citation.] [¶] There is nothing to show the discretionary impoundment authorized by [Vehicle Code] section 22655.5 is being or will be used as defendant speculates." (*Auer*, *supra*, 1 Cal.App.4th at p. 1668.)

The *Auer* court then considered the defendant's challenge to the statute as applied. (*Auer*, *supra*, 1 Cal.App.4th at p. 1668 [considering "the specific set of facts" present in the seizure at issue in the case].) The *Auer* court summarized the relevant facts as follows: "Defendant was observed by a police officer committing the misdemeanor of driving a vehicle on a public street while his driver's license was suspended. Before the officer could intervene, defendant had driven his vehicle from the public street onto private property." (*Id.* at p. 1668.) The *Auer* court rejected the defendant's constitutional challenge and held that, on these facts, the impoundment served the "legitimate objective" of preventing a driver from immediately reoffending after the officer departed from the scene. (*Id.* at p. 1669.)

c. *Vehicle Code section 22655.5 is constitutional*

We begin by considering [Petitioner's] challenge to Vehicle Code section 22655.5 as applied. [Petitioner] attempts to distinguish *Labron* and several other cases involving the automobile exception on the ground that in those cases, "police formed probable cause based on particularized suspicion as to the circumstances of the individual case, rather than a statute granting them sweeping powers to seize vehicles from private property." We reject this argument. Vehicle Code section 22655.5 *itself* requires that police have probable cause to seize the vehicle based on the circumstances of the case. [Petitioner] does not challenge the trial court's finding that the police had probable cause to seize and search his car for evidence relating to their sexual assault investigations. Because police had probable cause to believe [Petitioner's] car contained such evidence, the July 19 seizure of [Petitioner's]

car was constitutional pursuant to the automobile exception to the Fourth Amendment warrant requirement. (*Labron*, *supra*, 518 U.S. at p. 940.) Accordingly, we reject [Petitioner's] claim that the seizure of his car pursuant to Vehicle Code section 22655.5 was unconstitutional as applied to the facts of this case.

We also reject [Petitioner's] facial challenge to the constitutionality of the statute. Vehicle Code section 22655.5 plainly has numerous constitutional applications, as is evident by our rejection of [Petitioner's] challenge to the statute as applied, and the *Auer* court's rejection of the defendant's challenge to the application of the statute in that case. Because Vehicle Code section 22655.5 appears to be based on the automobile exception, it is clear that the statute does not "present [a] total and fatal conflict with applicable constitutional prohibitions." (*People v. Luera*, *supra*, 86 Cal.App.4th at p. 519.)

4.  *The search of [Petitioner's] car on July 19, 2003 was a lawful evidentiary search under the automobile exception*

[Petitioner] claims police performed an illegal inventory search of his car after they seized it on July 19, 2003.

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (*Whren v. U.S.* (1996) 517 U.S. 806, 812, fn. 1 [135 L.Ed.2d 89].) An inventory search need not be accompanied by probable cause. (*Id.* at pp. 811-812.) However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4 [109 L.Ed.2d 1].)

As discussed in the previous subsection, [Petitioner] does not dispute the trial court's finding that police had probable cause to seize and search his car on July 19. Therefore, the July 19 seizure and search of [Petitioner's] car was constitutional pursuant to the automobile exception. Since police could lawfully seize and search [Petitioner's] vehicle pursuant to the automobile exception, any inquiry into the lawfulness of an "inventory search" of his car is moot. (See *People v. Benites* (1992) 9 Cal.App.4th 309, 328 ["It should also be noted that once Deputy Holland opened the rear door and found the loaded shotgun, probable cause to search the rest of the van was created thus rendering moot any issue concerning the scope of the subsequent inventory search"].) [Footnote omitted.]

5.  *The search of [Petitioner's] car on August 6, 2003 was lawful, pursuant to the automobile exception*

[Petitioner] claims that police illegally searched his car on August 6. [Petitioner] argues that although police obtained a warrant to search his car on July 23, the warrant expired before it was executed. [Petitioner] contends that the August 6 search was thus illegal and that the knife and a pair of underwear discovered during that search should have been suppressed.

[California Penal Code] Section 1534, subdivision (a) provides in relevant part, "A search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[Petitioner] has cited no case, and we have found none, in which a court has held that suppression is an appropriate remedy for the failure of police to timely execute a warrant pursuant to section 1534, subdivision (a). On the contrary, in *People v. Bowen* (1982) 137 Cal.App.3d 1020 [187 Cal. Rptr. 614], the court stated, albeit in dicta, that suppression would not ordinarily be an appropriate remedy for a violation of section 1534, subdivision (a), "Even were we to find a violation of section 1534, it would not raise an issue of constitutional magnitude and would not result in the suppression of evidence absent a showing of prejudice to the defendant." (*People v. Bowen*, *supra*, 137 Cal.App.3d at p. 1034.)

[Petitioner] does not claim that the circumstances supporting the issuance of the expired warrant had changed as of August 6. We also note that the search was conducted only a few days after the expiration of the warrant. There is nothing in the record to suggest that [Petitioner] objected to the search on the ground that it was untimely, or that he suffered any undue prejudice from the untimeliness of the search. Under these circumstances, we doubt that suppression would be the proper remedy for the failure of police to timely execute a warrant in accordance with section 1534, subdivision (a).

In any event, assuming for the sake of argument that suppression would be the appropriate remedy for a violation of section 1534, subdivision (a) in a case in which a warrant was required, here, no warrant was required. Although [Petitioner] suggests that the automobile exception no longer applied because the August 6 search was conducted approximately two and a half weeks after the initial seizure of his car, he provides no authority to support this assertion. Further, [Petitioner] does not claim that the probable cause that authorized the seizure and search of his car on July 19, 2003 had grown stale by August 6. (Cf. *Florida v. White* (1999) 526 U.S. 559, 565, fn. 4 [143 L.Ed.2d 748] ["We express no opinion about whether excessive delay prior to a seizure could render probable cause stale, and the seizure therefore unreasonable under the Fourth Amendment"].) Under these circumstances, we conclude that the August 6 search was lawful under the automobile exception. (See, e.g., *United States v. Gastiaburo* (4th Cir. 1994) [16] F.3d 582, 587 ["Not a single published federal case speaks of a 'temporal limit' to the automobile exception. The Supreme Court has repeatedly stated that a warrantless search of a car (1) need not occur contemporaneously with the car's lawful seizure and (2) need not be justified by the existence of exigent circumstances that might have made it impractical to secure a warrant prior to the search"]; 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (4th Ed. 2004), Search and Seizure to Search for Evidence, § 7.2(b), p. 555 ["[W]arrantless car searches are not likely to be jeopardized by delay in making the search," citing *Johns*, *supra*, 469 U.S. 478].)

We conclude that irrespective of any violation of section 1534, subdivision (a), the search of [Petitioner's] car on August 6, 2003 was lawful pursuant to the automobile exception.

(Lodgment 6, at 7-19.)

Based on the foregoing, the state appellate court's rejections of the identical contentions raised by Petitioner in his second claim were reasonable, and are entitled to deference from this

///

1  Court because they are neither contrary to *Strickland* nor to the facts presented in this case.

2  28 U.S.C. § 2254(d).

3

4  **CONCLUSION**

5       For the foregoing reasons, Respondent respectfully requests that the Petition for Writ of

6  Habeas Corpus be denied with prejudice and that no certificate of appealability issue from the

7  denial.

8       Dated:  June 19, 2008.

9                                   Respectfully submitted,

10                                  EDMUND G. BROWN JR.
                                    Attorney General of the State of California
11
                                    DANE R. GILLETTE
12                                  Chief Assistant Attorney General

13                                  GARY W. SCHONS
                                    Senior Assistant Attorney General
14
                                    DANIEL ROGERS
                                    Deputy Attorney General
15
                                       *s*/**K**YLE **N**IKI **S**HAFFER
16
                                    KYLE NIKI SHAFFER
17                                  Deputy Attorney General

                                    *Attorneys for Respondent*
18

19  KNS:sm
    80250419.wpd
20  SD2008801153

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

*Page*

3

STATEMENT OF THE CASE                                                    1

4

STATEMENT OF FACTS                                                       2

5

      The Offenses Against Erin                                      2

6

      The Offenses Against Pamela                                    3

7

      The Offense Against Roxanne                                    3

8

      The Offense Against Stephanie                                  4

9

      The Defense                                                    4

10

ARGUMENT                                                                 5

11
12
13
14

    I.    **PETITIONER HAS FAILED TO PRESENT A VIABLE CLAIM UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT BECAUSE HE CANNOT DEMONSTRATE THAT THE STATE COURTS' RESOLUTION OF HIS CLAIMS WAS UNREASONABLE WITHIN THE MEANING OF THE ACT**                                                                   5

15
16

    II.   **THE STATE COURTS REASONABLY DETERMINED THAT THE ADMISSION OF PAMELA'S PRELIMINARY-HEARING TESTIMONY DID NOT VIOLATE PETITIONER'S SIXTH AMENDMENT RIGHT TO CONFRONTATION**                            6

17

        A.   Factual Background                                     7

18

        B.   Applicable Law                                         8

19
20

        C.   The State Courts Reasonably Determined That Pamela Was Unavailable to Testify at Petitioner's Trial, and That the Admission of Her Prior Testimony Did Not Violate Petitioner's Constitutional Right to Confrontation                                                10

21
22
23

    III.  **THE STATE COURTS REASONABLY DETERMINED THAT PETITIONER RECEIVED THE EFFECTIVE ASSISTANCE OF COUNSEL**                                                            12

        A.   Applicable Law                                         12

24
25
26

        B.   The State Appellate Court Reasonably Rejected Petitioner's Claim Because All of the Issues Petitioner Maintains Counsel Should Have Pursued Lack Merit and Would Not Have Resulted in the Suppression of Evidence in This Case                                     13

27

CONCLUSION                                                               20

28

1

# TABLE OF AUTHORITIES

2
*Page*

3
CASES

4
*Barber v. Page*
5    390 U.S. 719
88 S. Ct. 1318
6    20 L. Ed. 2d 255 (1968) ........... 9

7    *Bradshaw v. Richey*
546 U.S. 74
8    126 S. Ct. 602
163 L. Ed. 2d 407 (2005) ........... 6
9
*Brecht v. Abrahamson*
10   507 U.S. 619
113 S. Ct. 1710
11   123 L. Ed. 2d 353 (1993) ........... 11

12   *California v. Green*
399 U.S. 149
13   90 S. Ct. 1930
26 L. Ed. 2d 489 (1970) ........... 10
14
*Canales v. Roe*
15   151 F.3d 1226 (9th Cir. 1998) ........... 12

16   *Carey v. Musladin*
549 U.S. 70
17   127 S. Ct. 649
166 L. Ed. 2d 482 (2006) ........... 5
18
*Chambers v. Mississippi*
19   410 U.S. 284
93 S. Ct. 1038
20   35 L. Ed. 2d 297 (1973) ........... 9

21   *Crawford v. Washington*
541 U.S. 36
22   124 S. Ct. 1354
158 L. Ed. 2d 177 (2004) ........... 9
23
*Dows v. Wood*
24   211 F.3d 480 (9th Cir. 2000) ........... 12

25   *Early v. Packer*
537 U.S. 3
26   123 S. Ct. 362
154 L. Ed. 2d 263 (2002) ........... 5, 6
27
*Garvin v. Farmon*
28   258 F.3d 951 (9th Cir. 2001) ........... 2

**TABLE OF AUTHORITIES** (*continued*)

*Page*

1

2
*Hughes v. Borg*
3   898 F.2d 695 (9th Cir. 1990)                                        12

4   *Lambert v. Blodgett*
    393 F.3d 943 (9th Cir. 2004)                                         5
5
*Marshall v. Lonberger*
6   459 U.S. 422
    103 S. Ct. 843
7   74 L. Ed. 2d 646 (1983)                                              6

8   *Ohio v. Roberts*
    448 U.S. 56
9   100 S. Ct. 2531
    65 L. Ed. 2d 597 (1980)                                           9, 10
10
*People v. Cromer*
11   24 Cal. 4th 889
    15 P.3d 243
12   103 Cal. Rptr. 2d 23 (2001)                                         9

13   *People v. Ledesma*
    43 Cal. 3d 171
14   729 P.2d 839
    233 Cal. Rptr. 404 (1987)                                          12
15
*People v. Sanders*
16   11 Cal. 4th 475
    905 P.2d 420
17   46 Cal. Rptr. 2d 751 (1995)                                         8

18   *Pointer v. Texas*
    380 U.S. 400
19   85 S. Ct. 1065
    13 L. Ed. 2d 923 (1965)                                             9
20
*Price v. Vincent*
21   538 U.S. 634
    123 S. Ct. 1848
22   155 L. Ed. 2d 877 (2003)                                            5

23   *Schriro v. Landrigan*
    ___ U.S. ___
24   127 S. Ct. 1933
    167 L. Ed. 2d 836 (2007)                                            6
25
*Strickland v. Washington*
26   466 U.S. 668
    104 S. Ct. 2052
27   80 L. Ed. 2d 674 (1984)                                            12

28   *Weighall v. Middle*
    215 F.3d 1058 (9th Cir. 2000)                                      12

**TABLE OF AUTHORITIES**  (*continued*)

*Page*

1

2   *Williams v. Taylor*
3   529 U.S. 362
    120 S. Ct. 1495
4   146 L. Ed. 2d 389 (2000)                                    5, 12

5   *Wilson v. Henry*
    185 F.3d 986 (9th Cir. 1999)                                   13

6
    *Woodford v. Visciotti*
7   537 U.S 19
    123 S. Ct. 357
8   154 L. Ed. 2d 279 (2002)                                      13

9   *Yarborough v. Gentry*
    540 U.S. 1
10  124 S. Ct. 1
    157 L. Ed. 2d 1 (2003)                                        13

11

12  **CONSTITUTIONAL PROVISIONS**

13

14  United States Constitution
           VI Amendment                                       6-10, 12
15         XIV Amendment                                             9

16

17  **STATUTES**

18
    Antiterrorism and Effective Death Penalty Act ("AEDPA")
19         Pub. L. No. 104-132, 110 Stat. 1214 (1996)           5, 12, 13

20  28 U.S.C. § 2254                                     5, 6, 11-13, 20

21  California Evidence Code
22         § 1291                                                  6, 8
           § 240                                                      8
23
    California Penal Code
24         § 211                                                     1
           § 236                                                   1, 2
25         § 237                                                   1, 2
           § 245                                                      2
26         § 261                                                   1, 2
           § 288a                                                  1, 2
27         § 496                                                      2

28