CHRISTOPHER ADAME # V64509
CSATF E-2-116ᵁ
P.O. Box 5242
Corcoran, CA 93212

Petitioner, In Pro Per

FILED
JUL 2 3 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ORIGINAL

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER ADAME
           Petitioner,
   vs.
MATTHEW CATE, Secretary,
           Respondent.

Case No. (08CV0787HCAB)

TRAVERSE TO ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY
(28 USC 2254)

## CUSTODY

Petitioner agrees that he is in custody as stated in the Answer. Petitioner claims that he is not "lawfully" in custody because of the violations of his rights under the U.S. Constitution that are alleged in the "Grounds" section of his petition for Writ of Habeas Corpus. Except as expressly admitted herin, Petitioner denies each and every allegation of the Answer and re-affirms that his confinement is in violation of the Constitution.

## STANDARD OF REVIEW

Petitioner agrees that the petition is governed by the AEDPA. However, Petitioner contends that the state court unreasonably determined the facts which the state court found are contradicted by clear and convincing evidence in the record; and that the state court's conclusions of law are contrary to, and consist of an unreasonable application of, clearly establish law as determined by the U.S. Supreme Court.

a

## EXHAUSTION

Petitioner has exhausted all claims in his petition for writ of habeas corpus.

## PROCEDURAL ISSUES

The petition is timely under AEDPA and there has been no procedural defaults.

## DEMAND FOR EVIDENTIARY HEARING

Petitioner demands an evidentiary hearing in this court on all the claims in the petition.

## INCORPORATION BY REFERENCE

Petitioner incorporates by reference the Petition for Writ of Habeas Corpus, along with all supporting documents, including the Supporting Exhibits and Points of Authorities already filed. Further, Petitioner incorporates by reference Petitioner's Points and Authorities in Support of Traverse, which is being submitted contemporaneously.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein and in the documents incorporated by reference, Petitioner respectfully requests that the court:

(1) order an evidentiary hearing and request that the court appoint counsel for the petitioner;

(2) grant the writ of habeas corpus, reverse Petitioner's conviction, and order a new trial;

(3) appoint counsel for Petitioner, and

(4) grant all the appropriate relief

Dated:

*Christopher Adame*
Christopher Adame
Petitioner, In Propria Persona

TOPICAL INDEX
Traverse To Answer To Petition For Writ of Habeas Corpus . . . . . . . . . . . . . a, b
Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . d, e, f
Argument
I. Petitioner has presented a viable claim under AEDPA demonstrating that the state court's resolution of his claims was unreasonable within the meaning of the Act. . . . . . . . . . 1
II. The admission of trial of the preliminary hearing testimony of prosecutrix Pamela violated petitioner's sixth amendment rights to confront and cross-examine his accuser, and failed to meet the requirements of evidence code section 240 by establishing the state's due diligence to locate the witness. . . . . . . . . 1
III. Petitioner's counsel was ineffective in failing to litigate his Fourth Amendment issues. . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . 11
Footnote 1 . . . . . . . . . . . . . . . . . . . . . . . . . i
Proof of Service by Mail . . . . . . . . . . . . . . . . .

# TABLE OF AUTHORITIES

Cases (Federal Courts)

Mattox v. United States
    (1895) 156 U.S. 237 . . . . . . . . . . . . . . . . 2

Chambers v. Mississippi
    (1973) 410 U.S. 284 . . . . . . . . . . . . . . . . 2

Crawford v. Washington
    (2004) 541 U.S. 36 . . . . . . . . . . . . . . . . . 2

Ohio v. Roberts
    (1980) 448 U.S. 56 . . . . . . . . . . . . . . . . . 2

Barber v. Page
    (1968) 390 U.S. 719 . . . . . . . . . . . . . . . . 2

Chapman v. California
    (1967) 386 U.S. 18 . . . . . . . . . . . . . . . . . 8

Strickland v. Washington
    (1984) 446 U.S. 668 . . . . . . . . . . . . . . . . 9

Kimmelman v. Morrison
    (1986) 477 U.S. 365 . . . . . . . . . . . . . . . . 10

Cases (State Courts)

People v. Louis
    (1986) 42 Cal. 3d 969 . . . . . . . . . . . . . . . 2,5

People v. Cromer
    (2001) 24 Cal. 4th 889 . . . . . . . . . . . . . . 2,4,6

People v. Sanders
    (1995) 11 Cal. 4th 475 . . . . . . . . . . . . . . 3,4

People v. Walton
    (1996) 42 Cal. App. 4th 1004 . . . . . . . . . . . . 3

People v. Diaz
  (2000) 95 Cal. App. 4th 695 . . . . . . . . . . . . . . . 4
People v. Linder
  (1971) 5 Cal. 3rd 342 . . . . . . . . . . . . . . . . . 4
People v. Watson
  (1956) 46 Cal. 2d 818 . . . . . . . . . . . . . . . . . 8
People v. Andrade
  (2000) 79 Cal. App. 4th 651 . . . . . . . . . . . . . . 9
People v. Ledesma
  (1987) 43 Cal. 3d 171 . . . . . . . . . . . . . . . . 9,10
People v. Duncan
  (1991) 53 Cal. 3d 955 . . . . . . . . . . . . . . . . . 9
People v. Cox
  (1991) 53 Cal. 3d 618 . . . . . . . . . . . . . . . . . 9
People v. Pope
  (1979) 23 Cal. 3d 412 . . . . . . . . . . . . . . . . . 9
People v. Blomdahl
  (1993) 16 Cal. App. 4th 1242 . . . . . . . . . . . . . . 9

Statutes
Penal Code Section 1538.5 . . . . . . . . . . . . . . . 9,10
Penal Code Section 667.61 . . . . . . . . . . . . . . . . 8

Evidence Code section 240 . . . . . . . . . . . . . . . . 1
Evidence Code section 1291 subd. (a) . . . . . . . . . . 4

California Constitution
    Article I, section 15 . . . . . . . . . . . . . . 2

United States Constitution
    Sixth Amendment . . . . . . . . . . . . . . . 2, 8
    Fourth Amendment . . . . . . . . . . . . . . 9, 10

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ADAME<br>　　　　Petitioner,<br>vs.<br>MATTHEW CATE, Secretary<br>　　　　Respondent. | Case No. 08cv0787H(CAB)<br>POINTS AND AUTHORITIES<br>IN SUPPORT OF TRAVERSE |

Each allegation set forth in petition is realleged here.

## ARGUMENT

### I.

PETITIONER HAS PRESENTED A VIABLE CLAIM UNDER AEDPA DEMONSTRATING THAT THE STATE COURTS' RESOLUTION OF HIS CLAIMS WAS UNREASONABLE WITHIN THE MEANING OF THE ACT

Petitioner states reason in Standard of Review in accompanying Traverse To Answer To Petition For Writ of Habeas Corpus (page 1).

### II.

THE ADMISSION AT TRIAL OF THE PRELIMINARY HEARING TESTIMONY OF PROSECUTRIX PAMELA VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHTS TO CONFRONT AND CROSS-EXAMINE HIS ACCUSER, AND FAILED TO MEET THE REQUIREMENTS OF EVIDENCE CODE SECTION 240 BY ESTABLISHING THE STATE'S DUE DILIGENCE TO LOCATE THE WITNESS.

Petitioner was convicted of one count of forcible rape, one count of forcible oral copulation, and one count of false imprisonment on prosecutrix Pamela.

1

The incident has been described in detail in the Statement of Facts contained in the petition, and repeated in the Answer.

The right to confront one's accuser, provided in the Sixth Amendment and the California Constitution, art. I, section 15, seeks,

"to ensure that the defendant is able to conduct a 'personal examination and cross-examination of the witness, in which [the defendant] has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" (People v. Louis (1986) 42 Cal.3d. 969, 982, quoting Mattox v. United States (1895) 156 U.S. 237, 242-243). To deny or to significantly diminish the right deprives the defendant if the essential means of the testing of the credibility of the prosecution's witnesses, thus calling "into question the ultimate "integrity of the fact-finding process."'" (Chambers v. Mississippi (1973) 410 U.S. 284, 295.) (People v. Cromer, supra, 24 Cal.4th 889, 897.)

The importance of the fundamental right to confront and cross-examine one's accuser was emphasized in Crawford v. Washington, supra, 541 U.S. 36, where the court reviewed the history of the right and unanimously concluded that rules of evidence which permitted the introduction of unexamined, out-of-court statements against the accused violated the Sixth Amendment. (Id. at 53-54, overruling Ohio v. Roberts (1980) 448 U.S. 56.)

Nevertheless, the right is not absolute. The courts recognize that there is an exception to the confrontation requirement where a witness is unavailable has testified, and been subjected to cross-examination at a previous judicial proceeding. (People v. Cromer, supra, 24 Cal.4th 889, 897; Barber v. Page (1968) 390 U.S. 719.) Before the prosecution can introduce testimony from a prior judicial proceeding, it must demonstrate that the witness is "unavailable", and that prosecutorial authorities have made a good-faith effort to obtain the witness'

1  presence at trial, having exhausted all reasonable efforts to locate the witness.
2      What constitutes due diligence to secure the presence of a witness depends
3  upon the facts of the individual case, and the term is incapable of a mechanical
4  definition. The courts will consider the totality of the state's efforts in this
5  regard. (People v. Sanders (1995) 11 Cal. 4th 475, 523; People v. Walton (1996) 42
6  Cal. App. 4th 1004, 1009.)
7      Petitioner detailed the evidence and his argument regarding the issue stated
8  here in his petition and the accompanying memorandum. Respondent merely recites
9  the evidence presented in the trial court and claims this was sufficient to
10 sustain the convictions. It was not.
11     In this case, the prosecution's efforts were insufficient given their
12 knowledge of the witness. Pamela was a working prostitute, not a typical "citizen
13 witness." She lied to police on the night she reported the assault, first telling officers
14 that she had actually been abducted by knife point. She first stated that she had
15 only been forced to perform oral copulation, never mentioning being raped. In fact,
16 she was asked three times by Officer King if she was raped, and three times she
17 clearly stated "no". Pamela refused to go to the hospital for a SART examination
18 and refused to provide her pants for a forensic examination. She appeared at the
19 preliminary hearing only after being escorted to court by an investigator. Thereafter,
20 she became elusive. She was served with subpoenas by vice officers who found her
21 working as a prostitute on El Cajon Boulevard. Police ignored the fact that her acts
22 of prostitution violated her probation, as well as the law. When she missed a
23 court appearance, the prosecutor made no additional efforts to locate her.
24     Once the prosecution learned that Pamela was likely living in Las Vegas, they
25 did not send investigators to locate her, and made no efforts beyond the
26 keyboard of office computers. It's clear that, once Pamela's testimony was
27 memorialized at the preliminary examination, police made only perfunctory efforts
28 to locate her, knowing that her prior testimony would be admissible.

A trial court's conclusion that due diligence was established will not be undermined on appeal by any suggestion of additional efforts that might have been made. (People v. Diaz, supra, 95 Cal. App. 4th 695, 705.) However, the term "due diligence" connotes,

"persevering application, untiring efforts in good earnest, efforts of a substantial character." (People v. Linder (1971) 5 Cal. 3d 342, 346-347; accord, People v. Sanders, supra, 11 Cal. 4th at 523.) Relevant considerations include "'whether the search was timely begun'" [citation], the importance of the witness's testimony [citation], and whether leads were competently explored [citation]. (People v. Cromer, supra, 24 Cal. 4th 889, 904.)

The prosecution "persevered" in its efforts to secure Pamela's appearance at the preliminary hearing, but not afterwards. It made only occasional contact with a sister who occassionally heard from Pamela, never contacted Pamela's parents or her other sister, and failed to arrest her when they observed her violating her probation by "working" on El Cajon Boulevard. They never traveled to Las Vegas after learning that she had moved there. The witness was not only important to prove the counts relating to the alleged assault, but also in making petitioner eligible for an indeterminate life sentence under the multiple victims provision of the one strike law.

While the defense was able to cross-examine the witness at the preliminary hearing, petitioner was represented by different counsel at the time. A defense trial theory is seldom developed at this stage. Trial counsel, having had the advantage of subsequent discovery, very well would have had a different approach to this witness. Evidence Code section 1291 subd. (a), holds that "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and ... (2) The party against who the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Emphasis added. And see People v. Sanders, supra, 11 Cal. 4th 475, 523.)

4

(See Footnote 1 in the back of Points of Authorities for Traverse detailing an important subsequent discovery.)

Moreover, one of the fundamental rights to confront and cross-examine one's accuser is compelling the witness to stand before the jury so that it may judge her demeanor and determine whether her testimony is worthy of belief. (People v. Louis (1986) 42 Cal. 3d 969, 982.). A reading by a police officer from a cold transcript is no substitute for this important right, especially where the witness is a prosecutrix who has previously lied in discussing the case with police. The prosecution in this case essentially received a windfall by not exposing a lying prostitute to cross-examination at trial, relying instead on the transcript of the former testimony. The prosecution likely hoped their mild efforts to locate the witness were sufficient to demonstrate unavailability for purposes of using the transcript. However, for the reasons stated, the efforts were insufficient.

D.A. Investigator Cathy Garcia's efforts were insufficient. Garcia checked DMV records knowing Pamela doesn't have a car to drive. She checked hospitals knowing Pamela has no health care plan. She didn't check the post offices locally or in Las Vegas. She didn't check with parents or the other sister. Didn't check the website Misbehavin' escort services, Pamela's last employment. Garcia didn't have Pamela arrested after failing to appear on the June court date like they did with Roxanne. Garcia claims to have given a pager to Pamela to inform her to call in. For the last six months, Pamela would'nt call back. The pager method ceased to exist, if in fact it was used at all. There are no physical records showing this pager actually existed or log book showing it was issued to Pamela. Also, there is nothing showing in the record of Garcia asking Pamela for her pager back or wherabouts of it in her subsequent conversations with her. Garcia says she "stepped" up efforts to locate Pamela after August 11th, 2004. That step-up consisted solely on computer checks done in the luxory of her office. Garcia, not once didn't go out and physically look for Pamela, not even going over to the main sister's house to see if Pamela was there and not in Las Vegas. No efforts

5

were made to check with the phone company to where Pamela's incoming call to her sister came from. The phone company can reveal the actual number of an "unreadable" number and give out its location. Cathy Garcia also mentions she did not mention the next trial date to Pamela in their last conversation.

D.A. Carol Buck claims she gave Pamela the trial date in a conversation with her after Garcia last spoke to Pamela. Buck offers this information up after her witness Cathy Garcia tells the court she failed to tell Pamela the next trial date. Carol Buck's statements were not made under oath. The record shows she was never sworn in. Therefore, her comments relating to the matter should be excluded. In addition, the record shows D.A. Buck saying and doing whatever and obscuring the truth to assure petitioner's conviction at whatever the cost.

In reply to the state court's opinion, the court determined the prosecution demonstrated due diligence in attempting to secure Pamela's presence at trial because they attempted to stay in touch with her while in San Diego, and by accessing various computer databases after she failed to appear for a court date.

However, the court's opinion makes no mention of the controlling standard set forth in People v. Cromer, supra, 24 Cal. 4th at p. 904.

This court emphasized in Cromer that the state's efforts in attempting to locate a witness must be persevering, and tireless. This must mean that in attempting to locate a witness for trial the state must make more than a pro forma effort by searching a few data bases from the officer's desk.

The police knew Pamela was working the streets of Las Vegas, and they could easily have found her if someone traveled to Las Vegas and enlisted the help of the local vice squad who keeps tabs of prostitutes and knows the streets and hotels they can be found.

If the prosecutor needed Pamela's testimony in order to secure a conviction, there is no realistic doubt they would have dispatched officers to find her. By proceeding as they did, through a minimalist approach, they

6

benefitted by presenting her testimony through a police officer - essentially a professional witness who would not look as unreliable as Pamela in person.
Due diligence was not demonstrated by the prosecution in attempting to locate Pamela.

Respondent claims evidence of Pamela's reports to police officers were consistent with her subsequent preliminary hearing testimony. That is not true. The record and the police reports show otherwise.

Pamela was interviewed by various law enforcement on numerous occassions regarding the alleged incident with petitioner. Each interview had a different take on what happened. Pamela initially told Officer King and Detective McFalls that petitioner drove up to her with his penis exposed with a condom on it, kidnapped her at knifepoint off the streets, drove her to an underground garage and forced her to perform oral copulation in the front seat. Pamela never mentioned she was raped, in fact, denying it. She also never mentions she was prostituting.

In an interview with Detective Cunane, Pamela told the same above kidnap by knifepoint story at first, then upon Detective Cunane saying "he wasn't buying it", Pamela switch to a different version. She told him she was prostituting and picked up by petitioner, he forced her to orally copulate him in the back seat and then raped her in the backseat. He ejaculates inside her during intercourse. She then exits the car afterwards.

At the preliminary hearing, Pamela claims she spoke to Detective Cunane prior to the above interview. On June 11th, the day he booked her for prostitution, Pamela claims she told him that he was raped but not forced to give oral copulation. Detective Cunane states he never spoke to Pamela about the incident, the day he booked her in for prostitution. She never mentioned the incident or brought it up.

In a later interview by Detective McFalls on July 25th, Pamela mentions to her for the first time that she was raped and working as a prostitute.

D.A. Buck and Jack Knish also interviewed Pamela and in their version Pamela indicated that she was pushed to the ground before being raped and that petitioner

7

did not ejaculate in her during intercourse. Pamela at the preliminary hearing stated she wasn't pushed to the ground.

In her interview by various law enforcement officials and in her testimony at the preliminary hearing, Pamela switches back and forth on whether a condom was used or not used and whether petitioner ejaculated inside her or not during intercourse. At the preliminary hearing, Pamela is asked by Ms. Buck, "Did this man where a condom during intercourse?" Pamela stated, "No." A few questions later, D.A. Buck asks in regards to vaginal sex, "But he was still wearing the condom to your knowledge?" Pamela stated "Yes." D.A. Buck asks, "Do you know what was done with the condom after he finished?" Pamela replies, "I think he kept it on." Pamela is now saying a condom was used in intercourse. A few questions later D.A. Buck asks Pamela, "Did you ever ask that he at least use a condom?" Pamela answered, "Yes, I did." D.A. Buck asks, "What was his response?" Pamela replied, "No." Now Pamela is saying a condom wasn't used. Pages 21, 22, 23 of the preliminary transcript shows this line of questioning. Pamela is all over the place. Pamela also under oath at the preliminary hearing also stated she gave the same version of events to each officer she was interviewed by. That is not true, saying so, would say that all the officers in the case lied in their reports.

Based on the foregoing, this court should grant the claim presented in ground one, because the state courts unreasonably rejected the claim. Moreover, the error was prejudicial. The hearsay testimony of Pamela was the only evidence establishing the forcible rape, forcible oral copulation and false imprisonment by violence set forth in counts five, six, and seven. Conviction for counts five and seven made petitioner eligible for an indeterminate life term for sexually assaulting multiple victims under Penal Code section 667.61. Habeas corpus relief must be granted. The state courts violated the Evidence Code provisions regarding unavailable witnesses (People v. Watson (1956) 46 Cal. 2d 818) in their ruling, and the stricter standard set forth in Chapman v. California (1967) 386 U.S. 18, for depriving petitioner of his Sixth Amendment rights to confront and cross-examine his accuser. Habeas corpus relief must be granted.

## III.

**PETITIONER'S COUNSEL WAS INEFFECTIVE IN FAILING TO LITGATE HIS FOURTH AMENDMENT ISSUES.**

The Fourth Amendment issues are contained in the Exhibits section of the federal habeas corpus petition. Those issues were not litigated by either counsel at the trial court. Petitioner's counsel was constitutionally defient in failing to do so.

Previously, on September 9th, 2003, petitioner's first lawyer, Stephen Brodsky, filed a motion to suppress evidence pursuant to Penal Code section 1538.5. The motion alleged that the warrantless inventory search of petitioner's vehicle violated the Fourth Amendment, as its true purpose was to discover evidence of the crime he was suspected. It was also argued that the inventory search was improper in that police failed to show, follow established guidelines for conducting vehicle inventory searches. The motion was denied. When trial counsel attempted to renew the motion, it was denied "untimely."

### Applicable Law

To prevail upon a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient when measured against that of a reasonably competent attorney and that the deficient performance was so prejudicial to the defendant that it "undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having resulted in a just result." (People v. Andrade (2000) 79 Cal. App. 4th 651, 659-660. See also, People v. Ledesma (1987) 43 Cal. 3d 171, 216-218.) The proper standard is that of a reasonable probability that the outcome would have been different. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." (Strickland v. Washington (1984) 446. U.S. 668, 687-688. See also, People v. Duncan (1991) 53 Cal. 3d 955, 966; People v. Cox (1991) 53 Cal. 3d 618, 656.)

The defendant must show that the acts or omissions cannot be explained on the basis of any knowledgeable tactics. (People v. Pope (1979) 23 Cal. 3d 412, 425; People v. Blomdahl (1993) 16 Cal. App. 4th 1242, 1248)

## Legal Analysis

An attorney's failure to litigate meritorious suppression arguments can constitute ineffective assistance. (People v. Ledesma, supra, 43 Cal. 3d 171, 226; Kimmelman v. Morrison (1986) 477 U.S. 365.) Where defense counsel's failure to litigate a Fourth Amendment issue competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice (Kimmelman v. Morrison, supra, 477 U.S. 365, 374.)

The merits of petitioner's Fourth Amendment issues is in the Exhibit section of the habeas petition. Moreover, petitioner asserts the outcome would have been more favorable had the claims been litigated by counsel. The illegal seizure of petitioner's vehicle revealed physical evidence which corroborated the testimony of the prostitutes, and the vehicle itself was identified as the one used by the perpetrator of the assaults and robberies. The purse recovered in the illegal inventory search contained military identification of a former prostitute, and led to her discovery and the filing of a charge of receiving and concealing stolen property. The knife found inside the petitioner's trunk, under the spare tire, was identified as the weapon used.

These items represented the only physical evidence corroborating the version of events offered by the prostitutes. Almost assuredly, the outcome would have been more favorable absent the tainted evidence. In fact, the charge of receiving and concealing stolen property could not have been filed without the contents of the purse seized from the vehicle.

And while petitioner's counsel, by filing a motion pursuant to Penal Code section 1538.5, recognized the importance of attempting to suppress the fruits of the seizure of the vehicle, he failed to present at least three meritorious arguments for suppression. There can be no claim, then, that this was a tactical choice by counsel. (People v. Ledesma, 43 Cal.3d)

Counsel's performance fell below that of a reasonably competent attorney acting as his client's advocate. The omitted arguments are meritorious and, had they been properly litigated, would have rendered petitioner a more favorable outcome. Respondent's answer does nothing to show otherwise. Habeas corpus relief must be granted.

## Conclusion

Based on the foregoing, Petitioner should be granted an evidentiary hearing on his claims, and the habeas corpus petition should ultimately be granted.

Dated: July ___, 2008.

Respectfully submitted,

*Christopher Adame*

Christopher Adame,
Petitioner

## FOOTNOTE 1

One subsequent discovery has to do with Pamela being a witness to the Roxanne-Detective McFalls confrontation right before the preliminary hearing and whether Pamela herself was being pressured herself to say that she was raped. As the record shows, the initial police report shows Pamela denying that she was raped three times. The first mention of rape comes when interviewed by Detective McFalls at a later date. The defense had no opportunity to question Pamela regarding this discovery since Pamela was not present at trial and this discovery was not know until August 23, 2004, at the start of trial when made known by Gloria Tena, a witness in the trial.

Gloria Tena testified that she had an encounter with Erin, the other alleged rape victim, on August 22nd, 2004 at the family assistance building in La Mesa. Records show that both had attended a class there on the same day and time and also Gloria Tena was able to reveal personal information about Erin that one could only get by actually talking with the person. Erin told Gloria that petitioner did not rape her, that he just robbed her, the D.A. and the police were making a big deal out of the situation. Erin told Gloria that the D.A. and Detective McFalls were pressuring her and threatening her with jail time if she didn't testify on the matter. Erin also told Gloria that she and Pamela witnessed an argument between Detective McFalls and Roxanne Chavez right before the preliminary hearing. Detective McFalls threatened Roxanne with jail if she didn't get up on that stand and testify that she was raped. Roxanne said that she wasn't going to do it because she was not raped, they could throw her in jail if they wanted to. Later on down the line they actually did throw Roxanne in jail. At the preliminary hearing, petitioner was charged with one count of forcible rape and one count of false imprisonment as additional charges on top of the existing charges on Roxanne. Roxanne, true to her word, got up on the stand and testified that she was not raped or held against her will, her and the petitioner had consensual sex, he just didn't pay her at the end, kicking her out his car at knifepoint. The record shows that D.A. Buck tried her hardest to still argue to the court that Roxanne was raped even after her testimony and later on at the trial. Both charges of forcible rape and false imprisonment were dropped by the court.

In a similar matter at the preliminary hearing D.A. Buck presses Pamela about being pushed to the ground before being raped. Pamela said she wasn't.

D.A. Buck also introduced at trial another alleged victim, Lashone Walker (no charges filed against petitioner), prostitute, to testify how she was sexually assaulted. When asked if petitioner was the one who sexually assaulted her and if petitioner's car was the same car she was assaulted in, she assuredly stated "no" that he was not the man who sexually assaulted her and that was not the car it happened in (Lashone was shown blown up pictures of the outside and inside of petitioner's car and seen the petitioner live in court. D.A. Buck argued diligently that Lashone picked the petitioner in the photo lineup so it had to be him. Upon seeing petitioner in person Lashone stated petitioner was not the man who assaulted her.

All the above mentioned was brought to attention on the first day of trial or during trial. Pamela was a witness to the Roxanne-Detective McFalls exchange just before the preliminary hearing. Petitioner was unable to confront and question Pamela concerning this matter and also if she herself was being pressured to testify a certain way.

Proof of Service by Mail

I declare that:

I am a resident of _CSATF State Prison_ in the county of _Kings_, California. I am over the age of 18 years. My residence address is:

_CSATF E2-116ᵁ, P.O. Box 5242, Corcoran, CA, 93212_.

On _July 20, 2008_, I served the attached _Traverse to Answer and Points of Authorities For Writ of Habeas Corpus_ on the _parties herin_ in said case by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully paid, in the United States mail at _CSATF State Prison_ addressed as follows:

Kyle Niki Shaffer, Office of the Attorney General, 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on _July 20, 2008_ [date], at _Corcoran_, California.

_Christopher Adame_
[Type or Print Name]

_Christopher Adame_
[Signature]