UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ADAME,<br><br>        Petitioner,<br><br>  v.<br><br>MATTHEW CATE, Secretary, California Department of Corrections and Rehabilitation,<br><br>        Respondent. | Civil No. 08cv787 H (CAB)<br><br>**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Christopher Adame, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court convictions in Case Nos. SCD176307 and SCD180441. Petitioner was convicted of forcible rape, forcible oral copulation, felony false imprisonment, robbery, assault with a deadly weapon with force likely to cause great bodily injury, and receiving stolen property. He contends is federal constitutional rights were violated as follows: (1) he was denied his Sixth Amendment right to confront witnesses when the trial court allowed the prosecution to introduce a witness' testimony from the preliminary hearing because the witness was unavailable during the trial; and (2) his trial counsel was constitutionally ineffective when he failed to raise several arguments in support of a motion to suppress evidence. In his Traverse, Petitioner requests an evidentiary hearing on all of his claims and the appointment of counsel.

///

The Court has considered the Petition, Respondent's Answer, Petitioner's Traverse, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court recommends the Petition, the request for an evidentiary hearing, and the motion for appointment of counsel be **DENIED**.

## II.  FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The facts as found by the state appellate court are as follows:

**The Offenses Against Erin**

On the evening of May 27, 2003, Erin was working as a prostitute on El Cajon Boulevard in the City of San Diego. Petitioner approached her and asked her if she was "working." Erin indicated that she was, and got into his car. Petitioner drove to a parking lot in Mission Valley.

Petitioner agreed to pay Erin $60 to have sex. When Erin asked for the money, Petitioner responded that he would give it to her in a minute. Petitioner told her to get in the back seat, and she did so. Petitioner then got in the back seat and pulled out a knife from a pocket on the seat back. Petitioner held the knife to Erin's throat and told her to give him her money. Erin complied. Petitioner demanded that Erin give him a "blow job" and also demanded that she have vaginal intercourse with him. Erin complied with these demands as well. After Petitioner finished sexually assaulting Erin, he ordered her out of the car and drove away.

**The Offenses Against Pamela**

On the evening of June 8, 2003, Pamela was sitting at a bus stop on El Cajon Boulevard, working as a prostitute. Petitioner approached her in his car and told her that he wanted her to orally copulate him. Pamela and Petitioner agreed on a price for her services, and Pamela got into the car. Petitioner drove to an underground parking garage in Mission Valley. After they arrived at the garage, Pamela asked to be paid. Petitioner hesitated, then grabbed a knife and told her to "shut up and suck his dick." Petitioner held the knife to Pamela's face while she orally copulated him. After "a few minutes," Petitioner told Pamela to take off her jeans, but Pamela refused. Petitioner ordered Pamela out of the car, and again ordered her to take off her jeans. Pamela got out of the car and took off her jeans. Petitioner then raped Pamela by penetrating her vaginally from behind with his penis. Pamela was crying during the rape. After approximately 10 minutes, Petitioner stopped raping Pamela, and she left the area on foot. Petitioner drove away.

**The Offense Against Roxanne**

In July 2003, Roxanne was working as a prostitute on El Cajon Boulevard. Petitioner approached Roxanne while driving his car, and nodded at her. Roxanne got into Petitioner's car. Petitioner drove to an underground parking structure in Mission Valley. Once they arrived at the parking garage, Petitioner and Roxanne discussed prices for vaginal sex and

for oral copulation. Petitioner told Roxanne that he wanted to have intercourse.

Petitioner and Roxanne got in the back seat of the car and had vaginal intercourse. While they were having sex, they heard a woman's voice coming from outside of the car. Petitioner pulled out a knife from a pocket in the car, held it to Roxanne's neck, and ordered Roxanne out of the car. Roxanne complied, but inadvertently left her purse in the car. She asked Petitioner for the purse, but he drove away.

**The Offense Against Stephanie**

In February 2001, Stephanie was working as a prostitute in Oceanside. Petitioner approached Stephanie, and she got into his car. Petitioner and Stephanie agreed on a price for sex. Petitioner then drove to a residential neighborhood and parked. Petitioner and Stephanie got in the back seat of his car. Petitioner start to become a "little bit too physical," and Stephanie became frightened. She got out of the car, without her purse. When she asked Petitioner for her purse, Petitioner held the purse out of the car and told Stephanie to come and get it. Petitioner drove off without allowing Stephanie to retrieve the purse. Stephanie's military identification card was in her purse.

**The Defense**

Petitioner testified and admitted to having had contact with all of the women. Petitioner said he had consensual intercourse with both Erin and Roxanne, but claimed that he had disagreements with each of them regarding their fees, afterward. Petitioner admitted that he had used a knife during each of these two incidents to force the women out of his car.

Petitioner testified that he paid Pamela for oral sex. After he paid her, Petitioner received a call from his girlfriend on his cellular telephone. Petitioner's girlfriend said she was annoyed with him for being late. Petitioner decided that he no longer wanted to have oral sex with Pamela and demanded that Pamela return his money. When she refused, he grabbed the money from her breast area, took her purse, and threw the purse from the car. When Pamela when to retrieve the purse, Petitioner drove off.

Petitioner admitted that he had picked up Stephanie, intending to pay her to have sex with him. However, after Stephanie got into Petitioner's car, he became concerned that she might be a minor. Petitioner asked her if she could prove that she was an adult. After examining her identification, Petitioner realized that she was only 16. He asked Stephanie to get out of his car. Stephanie became angry and got out of the car. She left her identification card behind. Petitioner later put Stephanie's identification card in the trunk of his car.

(Lodgment No. 6.)

## III.  PROCEDURAL BACKGROUND

On June 7, 2004, the San Diego County District Attorney's Office filed a consolidated information in Case Nos. SCD176307 and SCD180441, charging petitioner with the following counts: (1) forcible rape, in violation of California Penal Code § 261(a)(2); (2) forcible oral copulation, in violation of Penal Code § 288a(c); (3) false imprisonment by violence, menace, fraud, and deceit, in violation Penal Code §§ 236, 237(a); (4) robbery, in violation of Penal Code § 211; (5) receiving stolen property, in violation of Penal Code § 496(a); (6) forcible rape, in violation of Penal Code § 261(a)(2);

(7) forcible oral copulation, in violation of Penal Code § 288a(c); (8) robbery, in violation of Penal Code § 211; (9) false imprisonment by violence, menace, fraud, and deceit, in violation Penal Code §§ 236, 237(a); (10) receiving stolen property, in violation of Penal Code § 496(a); and (11) soliciting an act of prostitution, in violation of Penal Code § 647(b). (Clerk's Transcript at 6-10.)

On September 15, 2004, a jury found Petitioner guilty of all counts except for counts nine and ten, which were subsequently dismissed by the People. (CT 391-411.) Petitioner was sentenced to 74 years, 8 months, to life. (CT at 411.)

Petitioner filed an appeal in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment No. 3.) Petitioner argued: (1) the trial court erred in admitting Pamela's preliminary hearing testimony at trial because the People failed to establish that they had exercised due diligence in attempting to secure her presence at trial; (2) the trial court erred in failing to suppress evidence police found after they unconstitutionally seized and searched his car; (3) his trial counsel was ineffective when he failed to raise certain arguments in support of a motion to suppress evidence; (4) the applicable statute of limitations required reversal of his conviction for receiving stolen property; and (5) his felony false imprisonment convictions must be reversed because felony false imprisonment is a lesser included offense of forcible rape and forcible oral copulation. (Lodgment No. 3.) On November 3, 2006, the Court of Appeal affirmed the judgment.

Petitioner submitted a petition for review in the Supreme Court of California. (Lodgment No. 7.) Petitioner argued: (1) the trial court erred in admitting Pamela's preliminary hearing testimony at trial because the People failed to establish that they had exercised due diligence in attempting to secure her presence at trial; (2) the trial court erred in failing to suppress evidence police found after they unconstitutionally seized and searched his car; and (3) his trial counsel was ineffective when he failed to raise certain arguments in support of a motion to suppress evidence. (Lodgment No. 7.) On February 14, 2007, the California Supreme Court summarily denied the petition for review. (Lodgment No. 8.)

Petitioner filed the instant federal petition on April 30, 2008. [Doc. No. 1.] Respondent Answered on June 19, 2008. [Doc. No. 8.] Petitioner filed his Traverse on July 23, 2008.

///

///

## IV. DISCUSSION

Petitioner claims he was denied his Sixth Amendment right to confront witnesses when the trial court allowed the prosecution to introduce Pamela's testimony from the preliminary hearing because she was unavailable during the trial. He also claims his trial counsel was constitutionally ineffective when he decided not to raise certain issues to support a motion to suppress evidence. Respondent argues Petitioner's claims should be denied because the state court decision denying these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.[1]

**A.   Standard of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (emphasis added).

The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

///

---

[1] Respondent does not offer much in the way of an argument in opposition to Petitioner's ineffective assistance of counsel claim. Respondent merely quotes the Court of Appeal decision for seven pages and then states: "[b]ased on the foregoing, the state appellate court's rejections of the identical contentions raised by Petitioner in his second claim were reasonable, and are entitled to deference from this Court because they are neither contrary to *Strickland* nor to the facts presented in this case." (Answer at 13-20.) The Court does not find this approach or method of argument to be either effective or persuasive.

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B.      Ground One**

Petitioner claims he was denied his Sixth Amendment right to confront witnesses when the trial court allowed the prosecution to introduce Pamela's testimony from the preliminary hearing at trial. He argues the trial court erred when it found Pamela to be unavailable to testify at trial because the prosecution did not make a good faith effort to locate Pamela. On direct appeal, the state appellate court denied Petitioner's claim and affirmed the decision of the trial court.

Under the Sixth Amendment, the prosecution may not admit a prior statement that is testimonial in nature unless: (1) the accused has had a meaningful opportunity to confront the witness; and (2) the witness is unavailable to testify at trial. *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007); *see also Barber v. Page*, 390 U.S. 719, 724-25 (1968) (holding that the admission of prior testimony that had been subjected to cross-examination violated the

Confrontation Clause because the state did not prove that the witness was unavailable). In *Crawford*, the Supreme Court made clear that "testimonial" statements include "prior testimony at a preliminary hearing." *Crawford*, 541 U.S. at 68.

### 1. Opportunity to Cross-Examine

Petitioner had a meaningful opportunity to cross-examine Pamela at the preliminary hearing. Petitioner was represented by counsel at the preliminary hearing and Pamela was subjected to cross-examination by Petitioner's counsel. (RT 492-504; 507.) The cross-examination addressed several issues, including Pamela's admission that she initially lied to the investigator when she told him she only engaged in oral copulation with Petitioner, and not sexual intercourse. (RT at 493.) Also, during closing argument, Petitioner's counsel emphasized the fact she had initially lied to the investigator. (RT at 1968.)

Although Petitioner argues he was deprived of an adequate opportunity to cross-examine Pamela because his trial counsel may have had a different approach to the witness than his counsel at the preliminary hearing, Petitioner's speculation does not establish a constitutional violation. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). Because Pamela's preliminary hearing testimony satisfies the "opportunity to cross-examine" prong of *Crawford*, the critical inquiry is whether Pamela was properly found to be "unavailable."

### 2. Unavailable

Petitioner contends the prosecution failed to take appropriate measures to assure Pamela would be present at trial. Specifically, he notes Pamela was a prostitute, was on probation, and that after the prosecution learned she was likely living in Las Vegas, they did not send an investigator to locate her. [Doc. No. 1 at 27.] He argues the attempts made by the prosecution to find her were merely "perfunctory." [*Id*. at 28.]

The party seeking to offer testimonial statements has the burden of showing that a witness is "unavailable." *See Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir. 1988). To establish unavailability, the proponent must show a good faith effort was made to obtain the witness's presence at

trial. *See Barber*, 390 U.S. at 724-25; *United States v. Olafson*, 213 F.3d 435, 441-42 (9th Cir. 1998). "While no court has articulated a standard for the diligence required of the prosecution . . . it is clear that herculean efforts are not constitutionally required." *Christian v. Rhode*, 41 F.3d 461, 467 (9th Cir. 1994).

Here, the record demonstrates the prosecution made a good faith effort to locate Pamela. Throughout the approximately year-long period between the preliminary hearing and the trial, the prosecution made numerous attempts to stay in contact with Pamela. Pamela was provided with a pager, through which she could be reached by the District Attorney's Office. (RT at 19.) Investigator Garcia testified she had the vice squad personally serve Pamela with subpoenas on El Cajon Blvd., and that subpoenas were also left at Pamela's sister's house in San Diego. (RT at 8-11.)

Approximately one month before the August 11, 2004 court date, Pamela contacted the prosecutor via phone. (RT at 22.) Pamela stated she did not have a permanent address where she could be reached. (*Id.*) The prosecutor implored Pamela to stay in contact with Investigator Garcia and made sure Pamela had numbers where staff could be reached. (*Id.*) Pamela was told a subpoena had been left for her at her sister's house, and she was notified of the August 11, 2004 trial date. (*Id.*) At the time, it appeared to the prosecutor that Pamela was fine and would appear at the trial. (*Id.*)

After Pamela failed to appear in court on August 11, 2004, Investigator Garcia went to Pamela's sister's house and left her telephone number with instructions for the sister to call if she had any information about Pamela's whereabouts. (RT at 21.) On August 16, 2004, Pamela contacted her sister and said she was living in Las Vegas with her boyfriend and did not intend to come to court. (RT at 12-13.) Investigator Garcia contacted the Las Vegas police, and the vice squad specifically, but they had had no contact with Pamela. (RT at 13.) She checked local, national, and international police databases to see if Pamela had been in contact with another police department, which would have provided her location and possibly a different address at which Pamela could be reached. (RT at 12.) Efforts to trace either Pamela or her boyfriend through the use of their social security numbers and personal credit history were unsuccessful. (RT at 13-14.) Efforts to trace either Pamela or her boyfriend through the California and Nevada Department of Motor Vehicles were unsuccessful. (RT at 14.) Investigator Garcia checked two of the boyfriend's former addresses, but neither Pamela nor her boyfriend were at

1  either location. (RT at 14.) Investigator Garcia also contacted local hospitals, but they all checked
2  negative. (RT at 15.)
3        In sum, the record shows the prosecutor exercised due diligence and made a good faith effort to
4  obtain the witness's presence at trial. Petitioner's claims in both his Petition and Traverse that more
5  could have been done does not negate the fact the prosecution made a good faith effort to locate Pamela,
6  which is all the Sixth Amendment requires. *See Windham v. Merkle*, 163 F.3d 1092, 1102 (9th Cir.
7  1998). Thus, because the trial court properly found the prosecution had made a good faith effort to
8  locate Pamela, the decision by the state appellate court was neither contrary to, nor an unreasonable
9  application of, clearly established Supreme Court law. Accordingly, this Court recommends Petitioner's
10  claim in Ground One be **DENIED**.
11  **C.   Ground Two**
12        Petitioner claims his counsel was constitutionally ineffective when he failed to raise several
13  arguments in support of a motion to suppress evidence found during a search of Petitioner's car. In a
14  petition for writ of habeas corpus alleging ineffective assistance of counsel, a court must consider two
15  factors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a petitioner must demonstrate
16  counsel's performance was deficient, which requires a showing that counsel made errors so serious he or
17  she was not functioning as the "counsel" required by the Sixth Amendment. *Id*. To this end, a petitioner
18  must show counsel's representation fell below an objective standard of reasonableness, and must
19  identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment
20  considering the circumstances. *Id*. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th
21  Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential, and there is a strong
22  presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
23  *Strickland*, 466 U.S. at 689; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).
24        Second, a petitioner must demonstrate counsel's errors were so egregious as to deprive petitioner
25  of a fair trial, one whose result is reliable. *Strickland*, 466 U.S. at 688. It is not enough to merely show
26  the errors had some conceivable effect on the outcome of the proceeding. *Id*. at 693. Instead, a
27  petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of
28  ///

the proceeding would have been different." *Id*. at 694. If the requisite showing of prejudice is not made, a court need not determine whether counsel's performance was deficient. *Id*. at 697.

In regards to the original motion to suppress, the facts as found by the state appellate court are as follows:

> In September 2003, Adame filed a motion to suppress evidence, which he claimed had been illegally obtained as a result of a police inventory search of his car in July 2003. Adame claimed the warrantless search of his car was unconstitutional because it was performed in order to obtain evidence of a crime, rather than to conduct an inventory of the car's contents. In the alternative, Adame claimed the People had failed to establish that the inventory search was conducted pursuant to standardized procedures.
>
> The People filed an opposition in which they argued that a warrantless evidentiary search of a car is proper whenever police have probable cause to believe the car contains evidence of a crime or is itself an instrumentality of a crime. The People argued that the police had such probable cause in this case. Alternatively, the People contended that the search was a proper inventory search. Finally, the People maintained that although a search warrant was not required, police obtained a warrant on July 23, 2003 to authorize an additional search of the car. Thus, even if the initial search of Adame's car was unlawful, all of the evidence seized from Adame's car would have inevitably been discovered.
>
> During Adame's preliminary hearing, the People offered the testimony of San Diego Police Detective Sharon McFalls, San Diego Police Sergeant Kenneth Stewart, and San Diego Police Officer Stephen Shebloski, regarding the circumstances of the seizure and searches of Adame's car. Detective McFalls testified that on May 27, 2003, Erin told police that she had been sexually assaulted in a car whose license plates matched a car registered to Adame. Erin also provided police with a physical description of the car. Roxanne told police on July 17, 2003 that a man had robbed her of her purse at knifepoint in a car that matched the description of Adame's car. Roxanne identified Adame as her assailant in a photographic lineup.
>
> On July 19, 2003, after police had obtained Roxanne's photographic identification of Adame and the license plate information, they seized and searched Adame's car. Sergeant Stewart testified that police "seized the car as evidence . . . and we searched for evidence in the [car]." On cross-examination, Sergeant Stewart testified that he believed police had probable cause to search Adame's car. Stewart also testified on cross-examination that Adame's car was seized pursuant to Vehicle Code section 22655.5. Officer Shebloski testified that after police seized Adame's car, it was towed down the street. Officer Shebloski then searched the car. During his search, Shebloski discovered a woman's purse that contained Roxanne's identification.
>
> On July 23, 2003, police obtained a warrant to search Adame's house and car. On August 6, police performed a further search of Adame's car at their crime laboratory. During the August 6 search, police discovered a knife and a pair of woman's underwear in the trunk of Adame's car, under the spare tire. Erin, Pamela, and Roxanne identified the knife as the one Adame used during the offenses. Police also found Stephanie's identification in the trunk of Adame's car during the August 6 search. Between July 19 and August 6, Adame's car was secured in a locked location.
>
> After hearing argument from defense counsel, the trial court denied the motion to suppress. The court ruled, "there was clear, probable cause to seize and search this vehicle . . . [The police] seized the vehicle as evidence, which the police have a right to do." The court also noted that most of the evidence from the car was obtained during the August 6 search, after

the police had obtained a search warrant, and that Adame had not raised any challenge with respect to the warrant. The court found that any evidence that was not discovered during the July 19 search would have been discovered during the August 6 search, and thus, that any items found during the July 19 search of the car were admissible pursuant to the inevitable discovery doctrine. Finally, the court ruled that "clearly there was an inventory search," referring to the July 19 search.

(Lodgment No. 6 at 8-10.)

Petitioner now contends his counsel was constitutionally ineffective because he failed to raise the following allegedly meritorious arguments in the motion to suppress: (1) the alleged unconstitutionality of California Vehicle Code § 22655.5, which was relied upon by the police to effect a warrantless seizure of Petitioner's vehicle; (2) the search of a closed purse found during an inventory search of Petitioner's vehicle was unreasonable; and (3) the search of appellant's vehicle on August 6, 2003, was based on a warrant issued on July 23, 2003, and thus exceeded the ten day time limit of California Penal Code § 1534(a). [Doc. No. 1 at 35-45.] He claims he was prejudiced by the failure to raise these arguments because the items discovered in his car represented the only physical evidence corroborating the victims' testimony, and thus the outcome would have been more favorable to him had the evidence been suppressed. [Doc. No. 1 at 32-33.]

On direct appeal, the state appellate court held that these three arguments were without merit. (Lodgment No. 6 at 8.) As a result, the Court of Appeal concluded Petitioner's counsel was not ineffective for failing to adequately raise these issues in the trial court. (*Id*.)

Although a meritorious Fourth Amendment issue is necessary to the success of Petitioner's Sixth Amendment claim, a good Fourth Amendment claim alone will not earn Petitioner federal habeas relief. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." *Id*. This Court shall address each of the allegedly meritorious arguments in turn.

**1. Constitutionality of Vehicle Code § 22655.5**

Petitioner claims his counsel should have argued that Vehicle Code § 22655.5, which was relied upon by police to effect a warrantless seizure of his vehicle from his driveway, was both facially unconstitutional and unconstitutional as applied to the facts of his case. [Doc. No. 1 at 35-40.] He argues the statute is unconstitutional because it authorizes police to seize a vehicle, without a warrant,

from private property. [Doc. No. 1 at 12.] The Court of Appeal rejected his claim as follows:

> We begin by considering Adame's challenge to Vehicle Code section 22655.5 as applied. Adame attempts to distinguish [*Pennsylvania v. Labron*, 518 U.S. 938 (1996)] and several other cases involving the automobile exception [to the Fourth Amendment] on the ground that in those cases, "police formed probable cause based on particularized suspicion as to the circumstances of the individual case, rather than a statute granting them sweeping powers to seize vehicles from private property." We reject this argument. Vehicle Code section 22655.5 *itself* requires that police have probable cause to seize the vehicle based on the circumstances of the case. Adame does not challenge the trial court's finding that the police had probable cause to seize and search his car for evidence relating to their sexual assault investigations. Because police had probable cause to believe Adame's car contained such evidence, the July 19 seizure of Adame's car was constitutional pursuant to the automobile exception to the Fourth Amendment warrant requirement. [citing *Labron*, 518 U.S. at 940.] Accordingly, we reject Adame's claim that the seizure of his car pursuant to Vehicle Code section 22655.5 was unconstitutional as applied to the facts of this case.
>
> We also reject Adame's facial challenge to the constitutionality of the statute. Vehicle Code section 22655.5 plainly has numerous constitutional applications, as is evident by our rejection of the defendant's challenge to the statute as applied, and the [*People v. Auer*, 1 Cal. App. 4th 1664 (Cal. Ct. App. 1991)] court's rejection of the defendant's challenge to the application of the statute in that case. Because Vehicle Code section 22655.5 appears to be based on the automobile exception, it is clear that the statute does not "present [a] total and fatal conflict with applicable constitutional prohibitions." [citation.]

(Lodgment No. 6 at 15-16.)

The state court determination was not unreasonable. Although the Fourth Amendment generally requires police to secure a warrant before conducting a search, there is an exception to this requirement for the search of vehicles. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Furthermore, the "automobile exception" has no separate exigency requirement. *Id*. A finding of probable cause alone satisfies the automobile exception to the Fourth Amendment's warrant requirement. *Id*. at 467; *see also United States v. Ross*, 456 U.S. 798, 809 (1982) (holding that where there was probable cause to search a vehicle, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained"); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."). The automobile exception also applies to vehicles found on private property. *See Labron*, 518 U.S. at 939.

In *United States v. Johns*, customs officers has probable cause to believe that several pickup trucks contained contraband. *United States v. Johns*, 469 U.S. 478, 482 (1985). The customs officers seized the pickup trucks and took them to DEA headquarters, where they were searched several days later. *Id*. The Supreme Court held that the seizure based on probable cause was lawful, and that there

was no requirement that the warrantless search of the vehicles occur contemporaneously with their lawful seizure. *Id*. at 484; *see also Ross*, 456 U.S. at 801 (upholding the warrantless seizure of a vehicle based on the automobile exception, where the police seized a vehicle from the roadside and took it to the police station for a more thorough search);

Here, the challenged statute, Vehicle Code § 22655.5, states in pertinent part:

> A peace officer . . . may remove a vehicle from the highway or from public or private property within the territorial limits in which the officer may act under the following circumstances:
>
> (a) When any vehicle is found upon a highway or public or private property and a peace officer has probable cause to believe that the vehicle was used as the means of committing a public offense.
>
> (b) When any vehicle is found upon a highway or public or private property and a peace officer has probable cause to believe that the vehicle is itself evidence which tends to show that a crime has been committed or that the vehicle contains evidence, which cannot readily be removed, which tends to show that a crime has been committed.

Cal. Vehicle Code § 22655.5(a)-(b).

In short, the challenged statute allows a police officer to seize and search a vehicle, without a warrant, so long as there is probable cause that would justify the issuance of a warrant. Such a statute is in accordance with the Supreme Court precedent discussed above. Petitioner does not dispute that there was abundant probable cause to lawfully seize and search his vehicle. Accordingly, because the statute was neither facially unconstitutional, nor unconstitutional as applied to Petitioner, Petitioner's trial counsel was not deficient when he did not raise this argument in the motion to suppress.

**2. Search of Closed Purse**

Petitioner contends the search of a closed purse found during an inventory search of Petitioner's vehicle was unreasonable because there was no showing that the closed purpose was opened and searched pursuant to established department guidelines. [Doc. No. 1 at 40.]

The Court of Appeal rejected his claim as follows:

> "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (*Whren v. U.S.* (1996) 517 U.S. 806, 812, fn. 1.) An inventory search need not be accompanied by probable cause. (*Id*. at pp. 811-812.) However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4.)
>
> As discussed in the previous subsection, Adame does not dispute the trial court's finding that police had probable cause to seize and search his car on July 19. Therefore, the July 19 seizure and search of Adame's car was constitutional pursuant to the automobile exception.

> Since police could lawfully seize and search Adame's vehicle pursuant to the automobile exception, any inquiry into the lawfulness of an "inventory search" of his car is moot. [citation] [internal footnote: Officer Shebloski testified that the purpose of the July 19 search was to search for evidence and to conduct an inventory of the car. In light of our conclusion that Officer Shebloski conducted a proper evidentiary search, the officer's testimony that he believed he was also performing an inventory search is irrelevant.]

(Lodgment No. 6 at 16-17.)

The state court determination was not unreasonable. It is well established that Police officers may conduct a warrantless search of containers discovered in the course of a lawful vehicle search. *See, e.g., Johns*, 469 U.S. at 483; *Ross*, 456 U.S. at 825 (stating that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Here, it is not disputed that the police had abundant probable cause to lawfully seize and search Petitioner's car. Accordingly, because the police could search the closed purse pursuant to the lawful vehicle search, the Court of Appeal properly determined that any inquiry as to whether the search of the closed purse would also constitute a valid inventory search was moot. Thus, Petitioner's counsel was not deficient when he did not raise this argument in the motion to suppress.

**3. August 6, 2003 Search**

Petitioner argues the search of his car on August 6, 2003, during which the police discovered the knife and a pair of underwear, was illegal because the search warrant was not executed within the ten day time limit of Penal Code § 1534(a). [Doc. No. 1 at 43-47.] The search warrant was issued on July 23, 2003.

The Court of Appeal rejected his claim as follows:

> Section 1534, subdivision (a) provides in relevant part, "A search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void."
>
> Adame has cited no case, and we have found none, in which a court has held that suppression is an appropriate remedy for the failure of police to timely execute a warrant pursuant to section 1534, subdivision (a). On the contrary, in *People v. Bowen* (1982) 137 Cal. App. 3d 1020, the court stated, albeit in dicta, that suppression would not ordinarily be an appropriate remedy for a violation of section 1534, subdivision (a), "Even were we to find a violation of section 1534, it would not raise an issue of constitutional magnitude and would not result in the suppression of evidence absent a showing of prejudice to the defendant." [Citation.]
>
> Adame does not claim that the circumstances supporting the issuance of the expired warrant had changed as of August 6, We also note that the search was conducted only a few days after the expiration of the warrant. There is nothing in the record to suggest that Adame objected to the search on the ground that it was untimely, or that he suffered any undue prejudice from the untimeliness of the search. Under these circumstances, we doubt that

suppression would be the proper remedy for the failure of police to timely execute a warrant in accordance with section 1534, subdivision (a)

In any event, assuming for the sake of argument that suppression would be the appropriate remedy for a violation of section 1534, subdivision (a) in a case in which a warrant was required, here, no warrant was required. Although Adame suggests that the automobile exception no longer applied because the August 6 search was conducted approximately two and a half weeks after the initial seizure of his car, he provides no authority to support this assertion. Further, Adame does not claim that the probable cause that authorized the seizure and search of his car on July 19, 2003 had grown stale by August 6. (*Cf. Florida v. White* (1999) 526 U.S. 559, 565, fn. 4 ["We express no opinion about whether excessive delay prior to a seizure could render probable cause stale, and the seizure therefore unreasonable under the Fourth Amendment"].) Under these circumstances, we conclude that the August 6 search was lawful under the automobile exception. (*See*, *e.g.*, *United States v. Gastiaburo* (4th Cir. 1994) 16 F.3d 582, 587 ["Not a single published federal case speaks of a 'temporal limit' to the automobile exception. The Supreme Court has repeatedly stated that a warrantless search of a car (1) need not occur contemporaneously with the car's lawful seizure and (2) need not be justified by the existence of exigent circumstances that might have made it impractical to secure a warrant prior to the search"]; citations).

We conclude that irrespective of any violation of section 1534, subdivision (a), the search of Adame's car on August 6, 2003 was lawful pursuant to the automobile exception.

(Lodgment No. 6 at 17-19.)

The state court's decision was not unreasonable. Petitioner's car was seized on July 19, 2003, and searched by Officer Shebloski. On August 6, 2003, a more thorough search of the car was conducted in the police laboratory, which discovered a knife and a pair of underwear in the trunk, under the spare tire. (Lodgment No. 6 at 8-10.)  Petitioner argues the automobile exception no longer applied to the August 6 search because it was conducted approximately 18 days after the car was seized. [Doc. No. 1 at 45.] However, Petitioner provides no Supreme Court authority to support such a temporal limit on the automobile exception.

The Supreme Court has repeatedly stated a warrantless search of a car need not occur contemporaneously with the car's lawful seizure. *See California v. Acevedo*, 500 U.S. 565, 570 (1991); *Johns*, 469 U.S. at 484-85. Therefore, the passage of time between the seizure and the search of Petitioner's car, while perhaps longer than usual, is legally irrelevant. Absent a Supreme Court decision clearly establishing temporal limits for a search to be conducted pursuant to the automobile exception, the state court's determination that the automobile exception still applied to the search was not contrary to, or an unreasonable application of, clearly established Supreme Court law. Accordingly, Petitioner's counsel was not deficient when he did not raise this argument in the motion to suppress.

///

In sum, because the three arguments put forth by Petitioner are without merit, Petitioner has failed to demonstrate that his counsel's failure to raise those arguments was deficient or that it fell outside the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. The state court decision denying the ineffective assistance of counsel claim was therefore neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Accordingly, this Court recommends Petitioner's claim in Ground Two be **DENIED**.

### D.  Evidentiary Hearing

Petitioner requests an evidentiary hearing for all of his claims. However, for the reasons discussed above, all of the claims in the Petition are without merit. Therefore, the Court recommends Petitioner's request for an evidentiary hearing be **DENIED**. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record).

### E.  Appointment of Counsel

Although Petitioner requests the appointment of counsel in his Traverse, he does not provide any arguments to demonstrate why the appointment of counsel is necessary to prevent a due process violation. The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners. *See McCleskey v. Zant*, 499 U.S. 467, 495 (1991); *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986); *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986). However, financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 may obtain representation whenever the court "determines that the interests of justice so require.'" 18 U.S.C. § 3006A(a)(2)(B); *Terrovona v. Kincheloe*, 912 F.2d 1176, 1181 (9th Cir. 1990); *Bashor*, 730 F.2d at 1234; *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). In the Ninth Circuit, "[i]ndigent state prisoners applying for habeas relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." *Chaney*, 801 F.2d at 1196; *Knaubert*, 791 F.2d at 728-29. Here, after a review of the Petition and all the documents presented in the case, and in the absence of any arguments by Petitioner, the Court does not find the appointment of counsel is necessary to prevent a due process violation. Therefore, this Court recommends the motion for appointment of counsel be **DENIED**.

16

08cv787

## V. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Marilyn L. Huff under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, (2) **DENYING** the request for an evidentiary hearing, (3) **DENYING** the motion for appointment of counsel, and (4) directing that Judgment be entered **DENYING** the Petition in its entirety.

**IT IS ORDERED** that no later than **August 27, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **10 days after being served with the objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: July 25, 2008

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge