1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

10

11

**CHRISTOPHER ADAME,**

CASE NO. 08cv787 H (CAB)

12                                              Plaintiff,

13          vs.

14   **MATTHEW CATE**, Secretary

15                                              Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING WRIT OF HABEAS CORPUS**

16                          **INTRODUCTION**

17          On April 30, 2008, Petitioner, Christopher Adame, filed a petition for writ of habeas corpus

18   under 28 U.S.C. § 2254.  (Doc. No. 1.)  Petitioner contends a violation of his federal constitutional

19   rights occurred when the trial court admitted the previous testimony of an unavailable witness, and

20   that his rights were violated by ineffective assistance of counsel.  (Id.)  On June 19, 2008, Respondent

21   answered.  (Doc. No. 8.)  On July 23, 2008, the Petitioner filed a traverse.  (Doc. No. 9.)  On July 25,

22   2008, the Magistrate Judge issued a Report and Recommendation.  (Doc. No. 10.)  On August 25,

23   2008, Petitioner filed objections to the Report and Recommendation.  (Doc. No. 11.)  This Court

24   considered these documents and all the supporting documents submitted by the parties.  For the

25   reasons set forth below, the Court **DENIES** the petition.

26
27
28

**BACKGROUND**

A.    **Procedural History**

On June 7, 2004, the San Diego County District Attorney's Office filed a consolidated information in Case Nos. SCD176307 and SCD180441, charging Petitioner with the following counts: (1) forcible rape, in violation of California Penal Code § 261(a)(2); (2) forcible oral copulation, in violation of California Penal Code § 288a(c); (3) false imprisonment by violence, menace, fraud, and deceit, in violation of California Penal Code §§ 236, 237(a); (4) robbery in violation of California Penal Code § 211; (5) receiving stolen property, in violation of California Penal Code § 496(a); (6) forcible rape, in violation California Penal Code § 261(a)(2); (7) forcible oral copulation, in violation of California Penal Code § 288a(c); (8) robbery, in violation of California Penal Code § 211; (9) false imprisonment by violence, menace, fraud, and deceit, in violation of California Penal Code §§ 236, 237(a); (10) receiving stolen property, in violation of California Penal Code § 496(a); and (11) soliciting an act of prostitution, in violation of California Penal Code § 647(b).  (Clerk's Transcript ("CT") at 6-10.)

On September 15, 2004, a jury found Petitioner guilty of all counts except for counts nine and ten, which the People subsequently dismissed.  (CT at 391-411.) The trial court sentenced Petitioner to 74 years, 8 months, to life.  (CT at 411.)

Petitioner filed an appeal in the California Court of Appeal, Fourth Appellate District, Division One.  (Lodgment No. 3.)  In his appeal Petitioner argued: (1) the trial court erred in admitting the preliminary hearing testimony of witness Pamela because the people failed to establish that they had exercised due diligence in attempting to secure her presence at trial; (2) the trial court erred in failing to suppress evidence police found after they unconstitutionally seized and searched his car; (3) his trial counsel was ineffective when he failed to raise certain arguments in support of a motion to suppress evidence; (4) the applicable statute of limitations required reversal of his conviction for receiving stolen property; and (5) his felony false imprisonment convictions must be reversed because felony false imprisonment is a lesser included offense of forcible rape and forcible oral copulation.  (Id.)  On November 3, 2006, the Court of Appeal affirmed unanimously affirmed the judgment in an unpublished opinion.  (Lodgment No. 6.)

1    Petitioner sought review from the Supreme Court of California arguing that: (1) the trial court

2    erred in admitting Pamela's preliminary hearing testimony at trial because the People failed to

3    establish that they had exercised due diligence in attempting to secure her presence at trial; (2) the trial

4    court erred in failing to suppress evidence police found after they unconstitutionally seized and

5    searched his car; (3) his trial counsel was ineffective because he failed to raise certain arguments in

6    support of a motion to suppress evidence. (Lodgment No. 7.)  On February 14, 2007, the California

7    Supreme Court summarily denied the petition for review.    (Lodgment No. 8.)  Following the

8    California Supreme Court's denial, Petitioner filed a federal petition on April 30, 2008. (Doc. No. 1.)

9    **B.    Factual History**

10   This Court gives deference to state court findings of fact, presuming them to be correct;

11   Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.

12   28 U.S.C. § 2254(e)(1).  The California Court of Appeal summarized the facts and trial history as

13   follows:

14   **The Offenses Against Erin**

15   On the evening of May 27, 2003, Erin was working as a prostitute on El Cajon
     Boulevard in the City of San Diego.  Petitioner approached her and asked her if she
16   was "working."  Erin indicated that she was, and got into his car.  Petitioner drove to
     a parking lot in Mission Valley.

17
     Petitioner agreed to pay Erin $60 to have sex.  When Erin asked for the money,
18   Petitioner responded that he would give it to her in a minute.  Petitioner told her to get
     in the back seat, and she did so.  Petitioner then got in the back seat and pulled out a
19   knife from a pocket on the seat back.  Petitioner held the knife to Erin's throat and told
     her to give him her money.  Erin complied.  Petitioner demanded that Erin give him
20   a "blow job" and also demanded that she have vaginal intercourse with him.  Erin
     complied with these demands as well.  After Petitioner finished sexually assaulting
21   Erin, he ordered out of the car and drove away.

22   **The Offenses Against Pamela**

23   On the evening of June 8, 2003, Pamela was sitting at a bus stop on El Cajon
     Boulevard, working as prostitute.  Petitioner approached her in his car and told her that
24   he wanted her to orally copulate him.  Pamela and Petitioner agreed on a price for her
     services, and Pamela got into the car.  Petitioner drove to an underground parking
25   garage in Mission Valley.  After they arrived at the garage, Pamela asked to be paid.
     Petitioner hesitated, then grabbed a knife and told her to "shut up and suck his dick."
26   Petitioner held the knife to Pamela's face while she orally copulated him.  After "a few
     minutes," Petitioner told Pamela to take off her jeans, but Pamela refused.  Petitioner
27   ordered Pamela out of the car, and again ordered her to take off her jeans.  Pamela got
     out of the car and took off her jeans.  Petitioner then raped Pamela by penetrating her
28   vaginally from behind with his penis.  Pamela was crying during the rape.  After
     approximately 10 minutes, Petitioner stopped raping Pamela, and she left the area on

- 3 -

foot.  Petitioner drove away.

**The Offense Against Roxanne**

In July 2003, Roxanne was working as a prostitute on El Cajon Boulevard.  Petitioner approached Roxanne while driving his car, and nodded at her.  Roxanne got into Petitioner's car.  Petitioner drove to an underground parking structure in Mission Valley.  Once they arrived at the parking garage, Petitioner and Roxanne discussed prices for vaginal sex and for oral copulation.  Roxanne told Petitioner that oral copulation would cost $50 and that sexual intercourse would cost $100.  Petitioner told Roxanne that he wanted to have intercourse.

Petitioner and Roxanne got in the back seat of the car and had vaginal intercourse.  While they were having sex, they heard a woman's voice coming from outside of the car.  Petitioner pulled out a knife from a pocket in the car, held it to Roxanne's neck, and ordered Roxanne out of the car.  Roxanne complied, but inadvertently left her purse in the car.  She asked Petitioner for the purse, but he drove away.

**The Offense Against Stephanie**

In February 2001, Stephanie was working as a prostitute in Oceanside.  Petitioner approached Stephanie, and she got into his car.  Petitioner and Stephanie agreed on a price for sex.  Petitioner then drove to a residential neighborhood and parked.  Petitioner and Stephanie got in the back seat of his car.  Petitioner started to become a "little bit too physical," and Stephanie became frightened.  She got out of the car, without her purse.  When she asked Petitioner for her purse, Petitioner held the purse out of the car and told Stephanie to come and get it.  Petitioner drove off without allowing Stephanie to retrieve the purse.  Stephanie's military identification card was in her purse.

**The Defense**

Petitioner testified and admitted to having contact with all of the women.  Petitioner said he had consensual intercourse with both Erin and Roxanne, but claimed that he had disagreements with each of them regarding their fees, afterward.  Petitioner admitted that he had used a knife during each of these two incidents to force the women out of the car.

Petitioner testified that he paid Pamela for oral sex.  After he paid her, Petitioner received a call from his girlfriend on his cellular telephone.  Petitioner's girlfriend said she was annoyed with him for being late.  Petitioner decided that he no longer wanted to have oral sex with Pamela and demanded that Pamela return his money.  When she refused, he grabbed the money from her breast area, took her purse, and threw the purse from the car.  When Pamela went to retrieve the purse, Petitioner drove off.

Petitioner admitted that he had picked up Stephanie, intending to pay her to have sex with him.  However, after Stephanie got into Petitioner's car, he became concerned that she might be a minor.  Petitioner asked her if she could prove that she was an adult.  After examining her identification, Petitioner realized that she was only 16.  He asked Stephanie to get out of his car.  Stephanie became angry and got out of the car.  She left her identification card behind.  Petitioner later put Stephanie's identification card in the trunk of his car.

**Motion To Suppress**

In September 2003, Adame filed a motion to suppress evidence, which he claimed had been illegally obtained as a result of a police inventory search of his car in July 2003. Adame claimed the warrantless search of his car was unconstitutional because it was performed in order to obtain evidence of a crime, rather than to conduct an inventory of the car's contents. In the alternative, Adame claimed the People had failed to establish that the inventory search was conducted pursuant to standardized procedures.

The People filed an opposition in which they argued that a warrantless evidentiary search of a car is proper whenever police have probable cause to believe the car contains evidence of a crime or is itself an instrumentality of a crime. The People argued that the police has such probable cause in this case. Alternatively, the People contended that the search was a proper inventory search. Finally, the People maintained that although a search warrant was not required, police obtained a warrant on July 23, 2003 to authorize an additional search of the car. Thus, even if the initial search of Adame's car was unlawful, all of the evidence seized from Adame's car would have inevitably been discovered.

During Adame's preliminary hearing, the People offered testimony of San Diego Police Detective Sharon McFalls, San Diego Police Sergeant Kenneth Stewart, and San Diego Police Officer Stephen Shebloski, regarding the circumstances of the seizure and searches of Adame's car. Detective McFalls testified that on May 27, 2003, Erin told police that she had been sexually assaulted in a car whose license plates matched a car registered to Adame. Erin also provided police with a physical description of the car. Roxanne told police on July 17, 2003 that a man had robber her of her purse at knifepoint in a car that matched the description of Adame's car. Roxanne identified Adame as her assailant in a photographic lineup.

On July 19, 2003, after police had obtained Roxanne's photographic identification of Adame and the license plate information, they seized and searched Adame's car. Sergeant Stewart testified that police "seized the car as evidence...and we searched for evidence in the [car]." On cross-examination, Sergeant Stewart testified on cross-examination that Adame's car was seized pursuant to Vehicle Code section 22655.5 Officer Shebloski testified that after police seized Adame's car, it was towed down the street. Officer Shebloski then searched the car. During his search, Shebloski discovered a woman's purse that contained Roxanne's identification.

On July 23, 2003, police obtained a warrant to search Adame's house and car. On August 6, police performed a further search of Adame's car at their crime laboratory. During the August 6 search, police discovered a knife and a pair of woman's underwear in the trunk of Adame's car, under the spare tire. Erin, Pamela, and Roxanne identified the knife as the one Adame used during the offenses. Police also found Stephanie's identification in the trunk of Adame's car during the August 6 search. Between July 19 and August 6, Adame's car was secured in a locked location.

After hearing argument from defense counsel, the trial court denied the motion to suppress. The court ruled, "there was clear, probable cause to seize and search this vehicle...[The police] seized the vehicle as evidence, which the police have a right to do." The court also noted that most of the evidence from the car was obtained during the August 6 search, after the police had obtained a search warrant, and that Adame had not raised any challenge with respect to the warrant. The court found that any evidence that was not discovered during the July 19 search of the car were admissible pursuant to the inevitable discovery doctrine. Finally, the court ruled that "clearly there was an inventory search," referring to the July 19 search. (Lodgment No. 6.)

**DISCUSSION**

A.      **Standard of Review**

This Court reviews Federal Habeas claims under the standard set out in 28 U.S.C. § 2254(d), which provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Therefore, to obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254 (d)(2). See Williams v. Taylor, 529 U.S. 362, 403 (2000). The Supreme Court interprets these clauses as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decision but unreasonable applies that principle to the facts of the prisoner's case.

Id. at 412-13.

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate decision. Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. Early v. Packer, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]", the state court decision will not be "contrary to" clearly established federal law. Id.

**B.      Petitioner's Confrontation Clause Claim**

Petitioner claims that the trial court violated his Sixth Amendment right to confront witnesses by allowing the prosecution to introduce at trial Pamela's testimony from the preliminary hearing. (Doc. No. 1.)  The Sixth Amendment prevents the prosecution from admitting a prior statement that is testimonial in nature unless: (1) the accused has had a meaningful opportunity to confront the witness; and (2) the witness is unavailable to testify at trial.  Crawford v. Washington, 541 U.S. 36, 68 (2004); United States v. Yida, 498 F.3d 945, 950 (9th Cir. 2007); see also Barber v. Pager, 390 U.S. 719, 724-25 (1968) (holding that the admission of prior testimony that had been subjected to cross-examination violated the Confrontation Clause because the state did not prove that the witness was unavailable).

**1.      Opportunity to Confront the Witness**

The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  Petitioner claims he was deprived of an adequate opportunity to cross-examine Pamela because his trial counsel may have taken a different approach to crossing the witness than his counsel at the preliminary hearing took.  This does not amount to a Confrontation Clause violation.  See id.  Counsel represented Petitioner at the preliminary hearing, and Pamela was subjected to cross-examination by Petitioner's counsel at that time.  (Reporter's Transcript ("RT") at 492-504; 507.)  The cross-examination addressed several issues, including Pamela's admission that she initially lied to the investigator when she told him she only engaged in oral copulation with Petitioner, and not sexual intercourse.  (RT at 493.)  During closing argument, Petitioner's trial counsel emphasized the fact that Pamela had initially lied to the investigator.  (RT at 1968.)

**2.      Unavailability**

Regardless of a previous meaningful opportunity to confront the witness, a prior testimonial statement will not be admitted unless the witness is unavailable.  Crawford, 541 U.S. at 68.  The party seeking to admit testimonial statements carries the burden of establishing that the witness is "unavailable."  See Terrovona v. Kincheloe, 852 F.2d 424, 427 (9th Cir. 1988).  Establishing

unavailability requires the proponent to show a good faith effort was made to obtain the witness's presence at trial.  See Barber, 390 U.S. at 724-25.  Although the appropriate amount of diligence and effort remains unclear, the Ninth Circuit previously stated that "herculean efforts are not constitutionally required." Christian v. Rhode, 41 F.3d 461, 467 (9th Cir. 1994).

Petitioner contends, however, that the Prosecution's efforts were so unheroic as to be "perfunctory" and "window-dressing." (Doc. 1 at 28, Doc. 11 at 6.)  Petitioner relies heavily on U.S. v. Mann, 590 F.2d 361 (1st Cir. 1978) for the proposition that Prosecution should have used "other reasonable means" to secure the witness's presence at trial than a subpoena. (Doc. 11 at 7.)  Although Mann does require the Prosecution to use other means besides a subpoena to ensure the voluntary appearance of an important witness, this does not mean that the Prosecution needed to do more than it did here.  See id. at 367.  For example, in Mann, part of the problem was that the Prosecution did not fulfil the implicit duty to prevent the witness from becoming absent.  Id. at 368.  Here, however, there is evidence that for the year between the hearing and the trial, the prosecution made numerous attempts to stay in contact with Pamela, including providing her with a pager.  (RT at 19.)

Other evidence demonstrating that the Prosecution made a good faith effort to locate Pamela includes the fact that a month prior to the August 11, 2004 court date, the Prosecutor implored Pamela to stay in touch with Investigator Garcia and ensured that Pamela had numbers where staff members could be reached.  (RT at 22.)  At that time, Pamela was told that a subpoena had been left for her at her sister's house, and she was notified of the August 11, 2004 court date.  (Id.)  Following the failure of Pamela to appear at the August 11, 2004, court date, Investigator Garcia went to Pamela's sister's house and left her telephone number with instructions for the sister to call if she had any information regarding Pamela's whereabouts. (Id. at 21.)  Five days later, on August 16, 2004, Pamela contacted her sister and said she was living in Las Vegas with her boyfriend and did not intend to come to court. (Id. at 12-13.)  Consequently, Investigator Garcia contacted the Las Vegas police, and specifically the vice squad, but they had no contact with Pamela.  (Id. at 13.)  Investigator Garcia also checked local, national, and international police databases in an attempt to find an alternative address at which Pamela could be reached. (Id. at 12.)  Investigator Garcia's attempt to trace Pamela or her boyfriend through the use of their social security numbers and personal credit proved unsuccessful. (Id. at 13-

14.) Similarly, efforts to trace Pamela or her boyfriend through the California and Nevada Department of Motor Vehicles failed, as did attempts to locate Pamela through local hospitals.  (Id. at 14-15. ) Investigator Garcia also checked two of the boyfriend's former addresses, but neither Pamela nor the boyfriend were present at either location. (Id.)

### 3.    Petitioner's Confrontation Clause Claim Denied

Petitioner had a meaningful opportunity to cross Pamela at the preliminary hearing, and Prosecution exercised due diligence in making a good faith effort to obtain the witness's presence at trial.  As a result, the Court **DENIES** Petitioner's claim.

### C.    Petitioner's Ineffective Assistance of Counsel Claim

Petitioner bases his second ground for relief, a claim of ineffective assistance of counsel, on the fact that his lawyer failed to raise several arguments in support of a motion to suppress evidence found during a search of Petitioner's car.  These arguments include: (1) the constitutionality of California Vehicle Code Section 22655.5; (2) the legality search of a closed purse found during an inventory search of petitioner's vehicle was unreasonable; and (3) the fact that the search of Petitioner's vehicle was executed after the warrant to do so had expired.  (Doc. 1 at 32-35.)  The Supreme Court laid out a two prong test requiring a petitioner for writ of habeas corpus alleging ineffective counsel to prove: (1) that counsel's performance was deficient; and (2) that counsel's errors were so egregious as to deprive petitioner of a fair trail.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

Regarding counsel's performance, a petitioner must show counsel's representation fell below an objective standard of reasonableness and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id. Judicial scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls withing the wide range of reasonable professional assistance. Id. at 689.  Even if a petitioner can show that his lawyer made unreasonable mistakes to the point of a meritorious Fourth Amendment issue, the petitioner must also prove with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. The prongs of this test may be taken in either order.  Id. at 697.

1           **1.**        **Constitutionality of California Vehicle Code § 22655.5**

2       Petitioner contends that his trial counsel ineffectively assisted him by failing to argue that

3 California Vehicle Code § 22655.5 was both facially unconstitutional and unconstitutional in violation

4 of the Fourth Amendment as applied to the facts of his case. (Doc. No. 1 at 35-40; Doc. No. 11 at 11-

5 13.) The Fourth Amendment requires police to secure a warrant before a search, but there is an

6 exception to this requirement for the search of vehicles. Maryland v. Dyson, 527 U.S. 465, 466

7 (1999). In California, Vehicle Code section 22655.5 codifies. It provides in relevant part:

8       A peace officer...may remove a motor vehicle from the highway or from public or
      private property within the territorial limits in which the officer may act under the
9       following circumstance:

10       (a) When any vehicle is found upon a highway or public or private property and a
      peace officer has probable cause to believe that the vehicle was used as the means of
11       committing a public offense.

12       (b) When any vehicle is found upon a highway or public or private property and a
      peace officer has probable cause to believe that the vehicle is itself evidence which
13       tends to show that a crime has been committed or that the vehicle contains evidence,
      which cannot be readily removed, which tends to show that a crime has been
14       committed.

15 Cal. Vehicle Code § 22655.5(a)-(b).

16       The police relied upon this statute to perform a search of Petitioner's car in his driveway.

17 Petitioner argues that this statute is both facially unconstitutional and unconstitutional as applied to

18 the facts of the case because "it authorizes warrantless seizures of vehicles located on private

19 property." (Doc. No. 11 at 11.) Petitioner raised the same argument in front of he California Court

20 of Appeal. (Lodgment No. 6.) In an opinion unanimously affirming the decision, the state appellate

21 court dismissed the Petitioner's argument as follows:

22       We begin by considering Adame's challenge to Vehicle Code section 22655.5 as
      applied. Adame attempts to distinguish [*Pennsylvania v. Labron*, 518 U.S. 938
23       (1996)] and several other cases involving the automobile exception [to the Fourth
      Amendment] on the ground that in those cases, "police formed probable cause based
24       on a particularized suspicion as to the circumstances of the individual case, rather than
      a statute granting them sweeping powers to seize vehicles from private property." We
25       reject this argument. Vehicle Code section 22655.5 *itself* requires that police have
      probable cause to seize and search his car for evidence relating to their sexual assault
26       investigations. Because police had probable cause to believe Adame's car contained
      such evidence, the July 19th seizure of Adame's car was constitutional pursuant to the
27       automobile exception to the Fourth Amendment warrant requirement. [citing *Labron*,
      518 U.S. at 940.] Accordingly, we reject Adame's claim that the seizure of his car
28       pursuant to Vehicle Code section 22655.5 was unconstitutional as applied to the facts
      of this case.

                              08cv0878 H (CAB)

1
2
3
4

We also reject Adame's facial challenge to the constitutionality of the statute. Vehicle Code section 22655.5 plainly has numerous constitutional applications, as is evident by our rejection of the defendant's challenge to the statute as applied, and the [*People v. Auer*, 1 Cal. App. 4th 1664 (Cal. Ct. App. 1991)] court's rejection of the defendant's challenge to the application of the statute in that case. Because Vehicle Code section 22655.5 appears to be based on the automobile exception, it is clear that the statute does not "present [a] total and fatal conflict with applicable constitutional prohibitions.' [citation.]

5

(Lodgment No. 6 at 15-16.)

6      Review of the California Court of Appeal opinion reveals that the decision was neither

7   contrary to, nor an unreasonable interpretation of, Supreme Court law. See 28 U.S.C. § 2254(d). In

8   analyzing the vehicle exception to the Fourth Amendment requirement, the Supreme Court has held

9   that the exception may be satisfied by a finding of probable cause alone, and there is no exigency

10  requirement. Dyson, 527 U.S. at 466-67. According to the Supreme Court, this exception also

11  applies to vehicles found on private property. Pennsylvania v. Labron, 518 U.S. 938, 939 (1996). As

12  a result, this Court rejects the argument that Petitioner's trial counsel was deficient.

13                    **2.    Search of Closed Purse**

14      Petitioner also contends that his trial counsel ineffectively assisted him by failing to argue to

15  that searching a closed purse found during an inventory search of Petitioner's vehicle was

16  unreasonable because there was no showing that the police followed established department

17  guidelines. The Court of Appeal's unanimous decision rejected this argument stating:

18
19
20
21

An inventory search is the search of property lawfully seized and detained in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." (*Whren v. U.S.* (1996) 517 U.S. 806, 812, fn. 1.) An inventory search need not be accompanied by probable cause. (*Id.* at pp. 811-812.) However, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4.)

22
23
24

As discussed in the previous subsection, Adame does not dispute the trial court's finding that police had probable cause to seize and search his car on July 19. Therefore, the July 19 seizure and search of Adame's car was constitutional pursuant to the automobile exception.

25

Since police could lawfully seize and search Adame's vehicle pursuant to the automobile exception, any inquiry into the lawfulness of an "inventory search" of his car is moot.

26

(Lodgment No. 6 at 16-17.)

27
28

1    Again, this Court cannot find that the state court determination was unreasonable.   The

2 warrantless search of containers discovered in the course of a lawful vehicle search is well established

3 under the law.  See e.g., United States v. Ross, 456 U.S. 798, 825 (1982) (stating that "[i]f probable

4 cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle

5 and its contents that may conceal the object of the search.").  Here, it is undisputed that the police had

6 abundant probable cause to lawfully seize and search Petitioner's vehicle.  Accordingly, the police

7 could search the close purse pursuant to the lawful vehicle search, and the Court of Appeal properly

8 determined that any inquiry as to whether the search of the closed purse would also constitute a valid

9 inventory search was moot.  Consequently, this Court also rejects the argument that Petitioner's trial

10 counsel was deficient on this ground.

11              **3.      August 6, 2003 Search**

12    Finally, Petitioner argues the search of his car on August 6, 2003, during which the police

13 discovered the knife and a pair of underwear, was illegal because the search warrant was not executed

14 within the ten day time limit of California Penal Code § 1534(a).  (Doc. No. 1. at 43-47.)  Petitioner

15 also argues that the automobile exception no longer applied to the August 6 search because it was

16 conducted approximately 18 days after the car was seized.  (Id. at 45.)  In rejecting this claim, the

17 California Court of Appeal wrote:

18         Section1534, subdivision (a) provides in relevant part, "A search warrant shall be
           executed and returned within 10 days after date of issuance.  A warrant executed within
19         the 10-day period shall be deemed to have been timely executed and no further showing
           of timeliness need be made.  After the expiration of 10 days, the warrant, unless
20         executed, is void."

21         Adame has cited no case, and we have found none, in which a court has held that
           suppression is an appropriate remedy for the failure of police to timely execute a
22         warrant pursuant to section 1534, subdivision (a).  On the contrary, in *People v. Bowen*
           (1982) 137 Cal. App. 3d 1020, the court stated, albeit in dicta, that suppression would
23         not ordinarily be an appropriate remedy for a violation of section 1534, subdivision (a),
           "Even were we to find a violation of section 1534, it would not raise an issue of
24         constitutional magnitude and would not result in the suppression of evidence absent a
           showing of prejudice to the defendant." [Citation.]
25
           Adame does not claim that the circumstances supporting the issuance of the expired
26         warrant had changed as of August 6.  We also not that the search was conducted only
           a few days after the expiration of the warrant.  There is nothing in the record to suggest
27         that Adame objected to the search on the ground that it was untimely, or that he suffered
           any undue prejudice from the untimeliness of the search.  Under these circumstances,
28         we doubt that suppression would be the proper remedy for the failure of police to timely
           execute a warrant in accordance with section 1534, subdivision (a).

1
2
3
4
5
6
7
8
9

In any event, assuming for the sake of argument that suppression would be the appropriate remedy for a violation of section 1534, subdivision (a) in a case in which a warrant was required, here, no warrant was required. Although Adame suggests that the automobile exception no longer applied because the August 6 search was conducted approximately two and a half weeks after the initial seizure of his car, he provides no authority to support this assertion. Further, Adame does not claim that the probable cause that authorized the seizure and search of his car on July 19, 2003 had grown stale by August 6. (*Cf. Florida v. White* (1999) 526 U.S. 559, 565, fn 4 ["We express no opinion about whether excessive delay prior to a seizure could render probable cause stale, and the seizure therefore unreasonable under the Fourth Amendment"].) Under these circumstances, we conclude that the August 6 search was lawful under the automobile exception. (*See, e.g., United States v. Gastiaburo* (4th Cir. 1994) 16 F.3d 582, 587 ["Not a single published federal case speaks of a 'temporal limit' to the automobile exception. The Supreme Court has repeatedly stated that a warrantless search of a car (1) need not occur contemporaneously with the car's lawful seizure and (2) need not be justified by the existence of exigent circumstances that might have made it impractical to secure a warrant prior to the search"]...)

10
11

We conclude that irrespective of any violation of section 1534, subdivision (a), the search of Adame's car on August 6, 2003 was lawful pursuant to the automobile exception.

12

(Lodgment No. 6 at 17-19.)

13

The ruling of the California Court of Appeal on this issue was not unreasonable. Following the

14 seizure and initial search of Petitioner's car on July 19, 2003, the police laboratory conducted a more

15 thorough search of the car on August 6, 2003. Petitioner argues that the automobile exception no

16 longer applies, but provides no Supreme Court authority to support such a temporal limit on the

17 automobile exception. Furthermore, although there is no Supreme Court decision clearly establishing

18 temporal limits for a search to be conducted pursuant to the automobile exception, there is ample

19 Supreme Court authority showing that a warrantless search of a car need not occur contemporaneously

20 with the car's lawful seizure. California v. Acevedo, 500 U.S. 565, 570 (1991); Johns, 469 U.S. at 484-

21 85. As a result, the decision of the California Court of Appeal was not contrary to, or an unreasonable

22 application of, clearly established Supreme Court law. Accordingly, Petitioner's counsel was not

23 ineffective for failing to raise this argument in the motion to suppress.

24
### 4.    Petitioner's Ineffective Assistance of Counsel Claim Denied

25

Given the fact that Petitioner's counsel was not deficient for failing to raise the three arguments

26 proposed by Petitioner, this Court **DENIES** the Petitioner's claim for ineffective assistance of counsel.

27
28

08cv0878 H (CAB)

1

**D.       Additional Requests**

2          In light of the foregoing, the Court denies Petitioner's request for an evidentiary hearing and

3   for appointment of counsel for this petition.  See McCleskey v. Zant, 499 U.S. 467, 495 (1991); Cheney

4   v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986).

5

6                                   **CONCLUSION**

7          For the reasons set forth above and in the Report and Recommendation, this Court **DENIES**

8   the Petitioner's request for a writ of habeas corpus.

9

10

11         IT IS SO ORDERED

12         DATED: April 21, 2009

13         _____

14                                   MARILYN L. HUFF, District Judge

15                                   UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

27

28